[Crim. No. 32884. Second Dist., Div. One. Feb. 1, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY LEE KING, Defendant and Appellant.

COUNSEL

Glen H. Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, Acting P. J.**—Defendant appeals from order revoking probation granted after imposition of sentence upon a plea of guilty to assault by means of force likely to produce great bodily injury and with a deadly weapon. Revocation proceedings were initiated on grounds which were

also the basis for new criminal charges (A-340503, A-340999) on which defendant had been held to answer but had not yet been tried.

Over objection of defendant, violation of probation was submitted by the People on the transcript of testimony taken at the preliminary hearing in each of the two cases. Without merit is appellant's contention that the quantum of the evidence is insufficient as a matter of law to sustain the order of revocation. Among the terms and conditions of probation were that defendant shall not own, use or possess any dangerous or deadly weapon, and that he shall obey all laws; violations thereof were established by a clear and convincing showing (*People* v. *Coleman,* 13 Cal.3d 867, 876, 877, fn. 8 [120 Cal.Rptr. 384, 533 P.2d 1024], and cases cited therein) and the trial court so found.[1] Overwhelming evidence establishes that on three separate occasions defendant was in possession of a dangerous and deadly weapon—a firearm—and used the same, and that he did not obey all laws.

*Case A-340503 (kidnaping, robbery,*
*rape, assault with intent to commit*
*murder and attempted murder).*

Around 1:10 p.m. on December 28, defendant pointed a gun at Floretta M. who was walking down Manchester Avenue, informed her it was a robbery, threatened to shoot her if she screamed and told her he had killed someone in the past. He pushed her into a vacant building, robbed her and had an act of intercourse with her while holding a gun to her head.

About six hours later (7:30 p.m.) defendant was standing on the sidewalk at 91st and Western with some juveniles; Rickey Bobbitt was getting into his Pinto when defendant pulled a revolver from his waistband, pointed it at Bobbitt and shot him in the back as a result of which he was hospitalized for five days. As defendant and the others fled 91st and Western, Officers Connly and Brockman took up pursuit; looking back at the police vehicle defendant ran to the gate of a residence and attempted to enter but failed; as he continued running the officers

---

[1]The court commented: "And in every one [case] from the preliminary hearing transcripts, which the Court has read and considered, there is clear and convincing evidence that the defendant was in possession of a dangerous and deadly weapon, to wit, a firearm, which is one of the express conditions of his probation." Later the court concluded: "Well, I think there is clear and convincing evidence that the defendant is in violation of probation on both of the conditions that he not own, use or possess any dangerous or deadly weapon, and that he obey all laws. And the court so finds. [¶] His probation is revoked."

saw him reach in his waistband; when apprehended defendant claimed he dropped some marijuana because he did not want to "get hassled," and took the officers back to show it to them but none could be found; retracing defendant's flight, Officer Connly found a .357 magnum revolver with an expended round in the bushes in front of the gate. Defendant was arrested for possession of a firearm then returned to 91st and Western where a witness identified him as the one who fired the gun at Bobbitt. Thereafter defendant told police that his friend "Duck" began shooting at the Pinto with a .22 magnum, then he removed his .357 magnum from his waistband and fired at the people in the Pinto. A spent shell casing recovered from the door of the Pinto was fired from a .357 magnum.

*Case A-340999 (murder).*

On November 15 around 9 p.m. Randolph Jackson was approached while seated in his red Monte Carlo in front of his apartment and shot in the head with a shotgun. Neighbors heard a shot and heard and saw a dark 1974 or 1975 Chevrolet Malibu with two passengers back up "real fast" and leave the area; Jackson was lying dead in the street. When arrested on December 28, 1977, defendant told officers about a murder in November of 1977; he said that Virgil Grundy shot a man in his burgundy Monte Carlo in the face with a sawed-off shotgun. Later he told officers he and Grundy were in Grundy's black Chevrolet Malibu, he had borrowed a loaded sawed-off 410 single shot shotgun from a friend and he drove the Malibu and Grundy got out to rob the man in the Monte Carlo but when he refused to give up his keys Grundy shot him in the face. When Grundy was arrested he told police that he drove the Malibu, defendant had possession of the shotgun the entire evening and that defendant got out of the car, demanded the keys from the man in the Monte Carlo and shot him in the face.

The identical contention, that the revocation of probation in advance of the trials of the two criminal cases denied him procedural due process because he was forced to forego his opportunity to testify on his own behalf at his revocation hearing in order to avoid self-incrimination at his pending trials, made by appellant herein was raised in *People* v. *Coleman,* 13 Cal.3d 867 at page 871 [120 Cal.Rptr. 384, 533 P.2d 1024]. The Supreme Court deemed it unnecessary to adjudicate Coleman's constitutional claim but afforded relief in the exercise of its "inherent supervisory powers of the courts of this state" (p. 872), and articulated this exclusionary rule: "We accordingly declare as a judicial rule of

evidence that henceforth upon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges, save for purpose of impeachment or rebuttal . . . . [¶] This exclusionary rule allows the state to continue to press for revocation of probation either before or after a probationer's trial on related charges, but insures that this scheduling discretion will not be influenced by the illegitimate desire to gain an unfair advantage at trial. Objection to prosecutorial use of revocation hearing testimony or its fruits may be made at trial . . . ." (*People* v. *Coleman,* 13 Cal.3d 867, 889 [120 Cal.Rptr. 384, 533 P.2d 1024]; see also *People* v. *Sharp,* 58 Cal.App.3d 126, 128-130 [129 Cal.Rptr. 476]; *People* v. *North,* 48 Cal.App.3d 530, 532 [120 Cal.Rptr. 661]; *People* v. *Carter,* 48 Cal.App.3d 369, 373-374 [121 Cal.Rptr. 677].)

Although the court in *Coleman* noted that "the most desirable method of handling the problems of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings" (*People* v. *Coleman,* 13 Cal.3d 867, 896 [120 Cal.Rptr. 384, 533 P.2d 1024]), it is clear that it recognized that the state may continue to press for a probation hearing preceding the criminal trial.[2] Thus we decline to curtail state action preceding the criminal trial made permissible in *Coleman,* by acceding to appellant's argument that a revocation hearing prior to the criminal trials denied him an opportunity to present witnesses and rebut the charges of violation of probation because he would have provided the prosecution with pretrial discovery to which it was not entitled and which would lighten its burden. Moreover, the taking of testimony of defense witnesses voluntarily called by the defendant at a revocation hearing cannot be equated with pretrial discovery in the sense that it is the result of a prosecution demand to compel the defense to produce anything or provide information. The cases appellant cites contemplate a prosecution "demand for discovery" in which the main concern of the court is "whether disclosure thereof [information] conceivably might lighten the prosecution's burden of proving its case in chief." (*Prudhomme* v. *Superior Court,* 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466

---

[2]Said the court in *People* v. *Sharp,* 58 Cal.App.3d 126 [129 Cal.Rptr. 476]: ". . . the [*Coleman*] court declined to fashion a judicial rule requiring that revocation be postponed until after trial." (P. 129.)

P.2d 673].) Although it is difficult to perceive how the testimony of a defense witness given in a revocation proceeding could be offered by the prosecution in its case in chief in the subsequent criminal trial, were the prosecution in a given case to benefit indirectly from the testimonial "fall out" of defense witnesses and if in some manner it should result in an unfair advantage to the prosecution in the criminal trial, defendant may raise the issue at that time. Further, the main issue in the revocation hearing here was far different from that which will arise in the criminal trials—the question on the former was whether defendant used or possessed a dangerous or deadly weapon in violation of his probation, while in the latter, it will be whether he is guilty of kidnaping, robbery, rape, assault with intent to commit murder, attempted murder and murder.

■ Asserting that inasmuch as the purpose of a preliminary hearing is not to determine innocence or guilt, and "shallow" cross-examination by the defense is encouraged, appellant argues that the prosecution's failure to give him adequate notice of its intent to use the preliminary hearing transcript at the revocation hearing deprived him of an opportunity to adequately confront and cross-examine witnesses. This was one of the grounds of his objection to the use of the preliminary hearing transcript at the revocation hearing. However, it is readily apparent from the oral proceedings had on the revocation hearing that indeed no notice that the People would use the transcript of the preliminary hearings on revocation was given to defendant before the preliminary hearings because at that time the People had no intention of proceeding with the revocation hearing prior to the criminal trials; and that it was the defendant who wanted the revocation hearing in advance of the trials. The prosecutor advised the court that "Mr. King [defendant] first of all, has demanded that we have this hearing which is the main reason we are having the hearing" and "The defendant has insisted on it and the matter has been continued before until this date." These statements went unchallenged by defendant, in fact were ignored by his counsel; thus it is reasonable to assume that after the preliminary hearing, in his zeal to have the matters speedily disposed of, defendant himself requested the revocation hearing precede the criminal trials. And he did this knowing that the preliminary transcripts would be used because the probation report of March 24, 1978, indicated the basis for the alleged probation violation arose out of the charges in the two criminal cases.

However, we know of no authority that requires as a matter of due process, advance notice to defendant of the manner of proving the

probation violation to be used by the People. If "shallow" cross-examination of the prosecution witnesses was the real complaint, defendant could have subpoenaed those witnesses for the revocation hearing for further cross-examination. He had at least from March 24, 1978, to May 15, 1978, in which to do so. Normally in a probation violation hearing the issue is submitted on probation and/or police reports without confrontation of witnesses; and we note that in *Coleman,* the matter was submitted on the transcript of the preliminary hearing on the criminal charge (p. 873), and defendant's probation was revoked. But contrary to the asserted "shallow" cross-examination of witnesses at the preliminary hearings, the record establishes that at the first one (Jan. 17, 1978) defense counsel, Mr. Gomez, a deputy public defender, exhaustively cross-examined the People's witnesses as did Mr. Brandow, deputy public defender representing defendant, in the second (Feb. 27, 1978).

The judgment is affirmed.

Thompson, J., and Hanson, J., concurred.