[Crim. No. 22663. May 26, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNY JASPER, JR., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Defendant and Appellant.

Jeff Brown, Public Defender (San Francisco), Peter G. Keane, Chief Attorney, Donna Teshima, Deputy Public Defender, Doron Weinberg and Julie A. Traun as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and George M. Palmer, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**RICHARDSON, J.**—Defendant, appealing from the revocation of his probation, asks us to reconsider and disapprove *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], which permits a probation revocation hearing to precede the trial of pending criminal charges on which revocation is based. As will appear, we conclude that *Coleman* should not be disapproved.

In 1978, following a plea of guilty to second degree burglary, defendant was sentenced to three years in state prison. Execution of his sentence was suspended, and he was placed on a five-year probation.

On February 11, 1981, the district attorney moved to revoke defendant's probation following his arrest for a burglary allegedly committed on October 20, 1980. On April 6, 1981, after defendant was held to answer on the burglary charge, but before trial of that charge, a probation revocation hearing was held. The court denied defendant's motion to continue the hearing until the burglary charge was tried. At the hearing, defendant declined to testify or offer any evidence. On the basis of the transcript of the preliminary hearing on the burglary charge, the court found defendant had violated his probation and committed him to state prison. This appeal followed.

Defendant's sole contention is that the trial court erred in denying his motion to continue the probation revocation hearing until completion of trial of the burglary charge. He asserts that he was improperly forced to choose between exercising his right to remain silent at the revocation hearing, thereby risking the revocation of his probation, and presenting a defense to revocation, thereby providing the People with pretrial "discovery" regarding the theory and details of his defense to the burglary charge.

An identical contention was considered by us in *People* v. *Coleman, supra,* 13 Cal.3d 867. There, we indeed acknowledged the "tails we win, heads you lose" dilemma which theretofore probationers had faced during pretrial probation revocation hearings. (Pp. 876-878.) Rather than adopt an absolute rule barring such hearings prior to trial on pending criminal charges, however, we unanimously concluded that the lesser remedy of a limited exclusionary rule, precluding subsequent prosecutorial use of a probationer's testimony or its fruits, affords a defendant an adequate safeguard.

As we noted in *Coleman,* "This exclusionary rule *allows the state to continue to press for revocation of probation either before or after a probationer's trial on related charges*, but insures that this scheduling discretion will not be influenced by the illegitimate desire to gain an unfair advantage at trial." (P. 889, italics added.)

We further explained in *Coleman* that "The exclusionary rule applies to the fruits of the probationer's prior revocation hearing in order to remove completely any illegitimate incentive to schedule revocation hearings in advance of trial. [Citation.] Moreover, protection against derivative as well as direct use of testimony would seem to be necessary to obtain that testimony over a claim of Fifth Amendment privilege. [Citation.] Since it affords protection against both direct and derivative use of a probationer's pretrial revocation hearing

testimony, our judicially declared exclusionary rule provides protection 'coextensive with the scope of the privilege against self-incrimination' [citation], thereby permitting us to decline to decide defendant's constitutional claim that pretrial revocation hearings force probationers to forego their Fifth Amendment right to remain silent at trial. *Even if we assume, arguendo, that defendant's constitutional claim has merit, the exclusionary rule we propound today gives probationers all the relief to which they are constitutionally entitled."* (Pp. 891-892, italics added.)

We agreed in *Coleman* that requiring a probationer to choose between testifying at his revocation hearing and incriminating himself at a later trial may create a "tension" between countervailing constitutional rights. Nevertheless, we also observed that "it is far from clear that we are under any constitutional duty to obviate this tension. The federal law on the subject is currently in a state of confusion." (P. 878.) Defendant fails to cite any post-*Coleman* federal cases suggesting that the constitutional issue has been resolved in his favor, and our independent research indicates that the opposite may be true. (See *Ryan* v. *State of Montana* (9th Cir. 1978) 580 F.2d 988, 993-994; *United States* v. *Dozier* (M.D.La. 1982) 543 F.Supp. 880, 885-888.) A recent Arizona case has marshalled the pertinent authorities in concluding that "all have found no violation of the Constitution in conducting the revocation hearing first. [Citations]." (*State* v. *Boyd* (1981) 128 Ariz.App. 381 [625 P.2d 970, 971].)

Defendant, urging reconsideration of *Coleman,* stresses recent decisions by us in the area of prosecutorial discovery. (E.g., *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534]; *People* v. *Belton* (1979) 23 Cal.3d 516 [153 Cal.Rptr. 195, 591 P.2d 485]; *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65].) These cases impose substantial additional restrictions upon the People's use of pretrial discovery procedures to compel disclosure of incriminating evidence. Yet a probationer's *voluntary* testimony or defense presented at a probation revocation hearing cannot fairly be characterized as a "compelled disclosure" within the scope of the foregoing cases.

As stated in *People* v. *King* (1979) 89 Cal.App.3d 506 [152 Cal.Rptr. 566], rejecting a similar argument, "the taking of testimony of defense witnesses voluntarily called by the defendant at a revocation hearing cannot be equated with pretrial discovery in the sense that it is the result of a prosecution demand to compel the defense to produce anything or provide information." (P. 510; accord *Ryan* v. *State of Montana, supra,* 580 F.2d at pp. 991-993.)

Moreover, as *Coleman* itself acknowledges, the limited exclusionary rule fashioned by us in that case affords ample protection to a probationer who is fearful that the People will make improper use of the evidence elicited at the

revocation hearing. Indeed, the People bear a heavy burden of proving a lack of relationship between the defense testimony at the revocation hearing and the prosecution's evidence later offered at the criminal trial. (13 Cal.3d at pp. 890-891.)

Defendant and an amicus curiae complain of an asserted "routine practice" in San Francisco Superior Court of scheduling all probation revocation hearings in advance of trial on the criminal charges. The record does not reflect that this practice exists, or that it was followed in the present case. ■ In any event, we decline to reverse defendant's conviction solely on that basis, for as *Coleman* makes clear, by reason of its limited exclusionary rule, a probationer's rights are not impaired by reason of the timing of his revocation hearing. (Accord *People* v. *Sharp* (1976) 58 Cal.App.3d 126, 130 [129 Cal.Rptr. 476]; see also Pen. Code, § 1203.2, subd. (a), authorizing probation revocation "at any time" and "regardless whether [the defendant] has been prosecuted for such [new] offenses.") Nevertheless, if such a routine practice does in fact exist, it is inconsistent with *Coleman*'s admonition that "the most desirable method of handling the problems of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings." (13 Cal.3d at p. 896.)

In this regard, in *Coleman* we contemplated the exercise of judicial "discretion in deciding whether to permit probation revocation proceedings to commence in advance of the disposition of related criminal proceedings . . . ." (P. 897.) Moreover, in *People* v. *Belleci* (1979) 24 Cal.3d 879, at page 888, footnote 7 [157 Cal.Rptr. 503, 598 P.2d 473], we implicitly disapproved any routine disregard of *Coleman*'s admonition that "the most desirable method" of handling revocation hearings may be to await trial of criminal proceedings. To the extent *People* v. *Sharp, supra,* is inconsistent with this conclusion, it is disapproved. Whether a revocation hearing should be held before trial rests in the reasonable discretion of the trial court.

Because the probation revocation hearing preceded the adoption of new section 28, subdivision (d), to article I of the state Constitution by the recent passage of Proposition 8 at the June 1982 election, we do not examine the question of the continued validity of *Coleman*'s limited exclusionary rule post Proposition 8.

The judgment is affirmed.

Mosk, J., Kaus, J., and Panelli, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

**BIRD, C. J.**—I respectfully dissent. I disagree with the majority's conclusion that appellant was not entitled to a continuance of his probation revocation hearing. Furthermore, I find it unfortunate, indeed, that the majority failed to set forth standards of any kind to guide a trial court in the exercise of its discretion in ruling on motions to continue revocation hearings. Such an omission makes meaningful appellate review of such rulings virtually impossible and sets the stage for a repetition of the very abuses in scheduling revocation hearings that brought this case before the court.

## I.

In 1978, appellant pleaded guilty to a violation of Penal Code section 459 and admitted two prior convictions. He was given a three-year term for the burglary but execution of the sentence was stayed, and appellant was placed on probation for five years.

On October 20, 1980, appellant was arrested and charged with another burglary. On the basis of this arrest, the prosecutor moved to revoke appellant's probation. On March 4, appellant was held to answer on the new charge and requested that the court continue his revocation hearing until the pending criminal proceedings were completed. That request was denied without prejudice.

The revocation hearing was held on April 6. The court admitted into evidence a supplemental probation report, which contained a recommendation that appellant's revocation proceedings be continued until after the burglary charges were concluded. The transcript of appellant's preliminary hearing on the alleged new offense was admitted as a basis for revocation.

Appellant did not testify or offer any evidence. He contended that if he were to do so he would have to reveal to the prosecution his defense to the pending burglary charge. Appellant renewed his motion for a continuance but this was denied.

The court held that appellant violated the conditions of his probation by committing the new offense. Probation was revoked and appellant was committed to state prison.[1]

## II.

Appellant contends that the state placed him in a position in which he was forced to choose between basic constitutional rights by scheduling his revoca-

---

[1]The record in this case does not reveal the final disposition of the burglary charge which was the basis for the revocation of appellant's probation.

tion hearing prior to the trial on his burglary charge. On the one hand, if he exercised his right to remain silent at the probation hearing, he would suffer revocation as a direct result. On the other hand, if he presented a defense at the hearing, he would sacrifice his right to remain silent as to the pending criminal charge and effectively provide discovery to the prosecution of the theory and strategy of his defense. Appellant asserts that this Hobson's choice is impermissible under the Constitution.

The first case to address this issue was *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024]. There, the question was posed as to whether it would be permissible for the state to introduce, during a criminal trial, testimony which was given by an accused at a prior probation revocation hearing.

Coleman argued that he was "forced to forego his opportunity to testify in his own behalf at his revocation hearing in order to avoid incriminating himself at his pending trial." (*Id.,* at p. 871.) Thus, he contended, he had been denied procedural due process by the pretrial revocation procedure. (*Ibid.*) He also asserted a "constitutional claim that pretrial revocation hearings force probationers to forego their Fifth Amendment right to remain silent at trial." (*Id.,* at p. 892.)

The *Coleman* court recognized the constitutional dilemma with which a probationer is confronted by pretrial revocation proceedings, and it discussed in detail the constitutional rights and the policies underlying those rights which are burdened by this procedure. The court found that permitting the use at trial of a probationer's prior revocation hearing testimony created an inevitable tension between two fundamental rights: the right to due process at the revocation hearing and the right to remain silent at trial. (*Id.,* at p. 878.)

Initially, the court directed its attention to the due process problem. It noted that "[t]he principal policy underlying a probationer's right to an opportunity to be heard at a revocation hearing . . . is to assure informed, intelligent and just revocation decisions. 'Both the probationer . . . and the State have interests in the accurate finding of fact and the informed use of discretion . . . .' It is thus detrimental to the state and the probationer alike if probation is revoked 'because of erroneous information or because of an erroneous evaluation of the need to revoke . . . .'

"Another broad policy objective of the constitutional guarantee of an opportunity to testify at a revocation hearing is to enhance the chance of rehabilitating probationers or parolees by treating them with 'basic fairness'. . . . Arbitrary or otherwise unfair treatment is likely to generate negative reactions and attitudes at odds with the rehabilitative goals of the penal system. [¶] Both of

these policies are seriously undermined when a probationer is deterred by the possibility of self-incrimination from taking advantage of his right to be heard at his probation revocation hearing. When a pending or potential criminal charge forms the basis of an alleged violation of a condition of probation, a probationer who can explain his actions only by jeopardizing his chances of acquittal at a subsequent criminal trial may understandably feel that his opportunity to be heard is more illusory than real and that he is being deprived of his liberty without one of the essential elements of rudimentary fairness—a meaningful chance to speak on his own behalf." (*Id.*, at pp. 873-874, fn. omitted, citations omitted.)

The court discussed two policies underlying the privilege against self-incrimination which are "adversely affected by permitting a probationer's testimony at his revocation hearing to be used against him at the subsequent criminal trial . . . ." (*Id.*, at p. 875.)

The first of these policies was that of maintaining "a fair state-individual balance" at the later trial where the government should "shoulder" its proper burden. (*Id.*, at p. 875, citation omitted.) As the court noted, "[w]hen a probationer is deterred from testifying at his revocation hearing by fears of self-incrimination at his subsequent trial, the People's chances of securing his incarceration through the revocation proceeding are further enhanced. And if a probationer does successfully fight revocation by testifying at the hearing, the People's chances of securing his conviction of a new offense will have been improved by the probationer's having been forced, in effect, to be one of the prosecution's principal witnesses in its case in chief at his trial." (*Id.*, at pp. 876-877, fn. omitted.)

The second policy involved the "historic aversion to cruelty reflected in the privilege against self-incrimination." (*Id.*, at p. 878.) The *Coleman* court recognized that this policy was undermined when a probationer was effectively given a choice only among "self-accusation, perjury or injurious silence." (*Ibid.*)

In an effort to protect these important constitutional interests, the court invoked its supervisory powers and created a rule of use immunity with regard to a probationer's testimony at a revocation hearing. This rule prohibited the use of a probationer's revocation hearing testimony or the fruits thereof in subsequent criminal proceedings. (*Id.*, at pp. 889, 891-892.)

The *Coleman* court saw that this resolution permitted the court "to decline to decide defendant's constitutional claim that pretrial revocation hearings force probationers to forego their Fifth Amendment right to remain silent at trial." (*Id.*, at p. 892.) The court believed that this new rule would "give [] probationers all the relief to which they [were] constitutionally entitled." (*Ibid.*)

However, developments unforeseeable at the time have demonstrated that the *Coleman* rule needs strengthening in order adequately to cope with abuses associated with the scheduling of revocation hearings and fully to protect the probationer's constitutional rights.[2]

The San Francisco Superior Court, the jurisdiction from which appellant's case arises, apparently has followed a policy of setting "virtually all probation revocation hearings *prior* to trial, without exercising discretion in each case." (*People* v. *Sharp* (1976) 58 Cal.App.3d 126, 130 [129 Cal.Rptr. 476], italics added.) That policy represents a fundamental disregard for the spirit of the *Coleman* ruling as well as this court's reaffirmation of its preference for post-trial revocation proceedings as enunciated in *People* v. *Belleci* (1979) 24 Cal.3d 879, 888, footnote 7 [157 Cal.Rptr. 503, 598 P.2d 473].[3]

---

[2]The *Coleman* court appears to have contemplated that most probation revocation hearings would be held *after* disposition of the related criminal proceedings.

The court noted that its rule left the prosecutor free to continue to press for revocation either before or after trial. (*Id.,* at p. 889.) However, it also pointed out that it would not "set standards for the exercise of a [trial] court's sound discretion in deciding whether *to permit* probation revocation proceedings to commence in advance of the disposition of related criminal proceedings . . . ." (*Id.,* at p. 897, italics added.) In this context, the court noted that "the most desirable method of handling the problem of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings." (*Id.,* at p. 896.)

Assuming this preference would be followed by trial courts, the *Coleman* court felt it necessary to "point out . . . that we view it as entirely consistent with the exclusionary rule announced herein and its underlying purposes for a probationer, if desirous of obtaining a speedy resolution of his probation status notwithstanding related criminal liability, to offer to waive the benefit of this exclusionary rule if the court will allow the probation revocation hearing to proceed in advance of disposition of the related criminal liability." (*Id.,* at p. 897.)

[3]This court has not been alone in concluding that probation revocation proceedings should not be instituted until after the conclusion of related criminal proceedings. The drafters of the Model Penal Code provided for post-trial revocation proceedings. (See Model Pen. Code (Proposed Official Draft 1962) § 301.3.) In the comment to this section, the drafters indicated that the post-trial proceeding is preferable because "[t]he defendant's procedural rights are . . . fully preserved." (Com. Model Pen.Code, § 301.3, p. 150 (Tent. Draft No. 2, 1954).)

This is also the position taken by the American Bar Association in its Standards Relating to Probation. As the comment to these standards observes, "a revocation proceeding before trial of the charge on which it is based well could compromise the assertion of [the] fundamental . . . right [against self-incrimination]. . . . [¶] These problems can be minimized if the probation revocation proceeding is postponed until after the disposition of the new criminal charge. The record will then be clear and the possibilities of unfairness to the probationer will have been sharply reduced, particularly as they involve the privilege against self-incrimination. This standard accordingly suggests such postponement as an operating policy." (ABA Project on Minimum Standards for Crim. Justice, Stds. Relating to Probation (Approved Draft 1970) std. 5.3, com., pp. 63-64, citations omitted.)

The same preference has been expressed by the National Advisory Commission on Criminal Justice Standards and Goals in its Report on Corrections (1973) at pages 160-161.

Stay of revocation proceedings until conclusion of related criminal proceedings would also be required by the provisions of the National Conference of Commissioners on Uniform State Laws, Model Sentencing and Corrections Act (1979) section 3.311, page 181. The United Kingdom requires by statute that, where a new offense has been committed by a probationer,

Furthermore, the extent to which pretrial revocation proceedings impermissibly infringe on the constitutional policies identified in *Coleman* has been clarified by recent developments in the law. A little more than a year and one-half after *Coleman,* this court considered the practice of compelling an accused in a criminal prosecution to reveal the names of prospective defense witnesses so that potential jurors could be queried about them. In *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65], such a practice was found to violate article I, section 15 of the California Constitution.

The *Allen* court declared that the California Constitution "plainly proscribes compelled defense disclosures which 'conceivably might lighten the prosecution's burden of proving its case in chief.'" (*Allen* v. *Superior Court, supra,* 18 Cal.3d at p. 525, citation and italics omitted.) The court held that the privilege against self-incrimination prohibits compulsory disclosures from the defense "regardless of the form which the compulsion takes." (*Id.,* at p. 526.)

In *People* v. *Belton* (1979) 23 Cal.3d 516 [153 Cal.Rptr. 195, 591 P.2d 485], the defense was not required to specify the defects in the prosecution's case when making a motion for acquittal at the conclusion of the prosecution's presentation of evidence. "[T]o require a defendant to state specific grounds in support of the motion for acquittal would . . . come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt." (*Id.,* at p. 522, fn. omitted.)

Two years ago, this court disapproved all trial court attempts to frame prosecutorial discovery orders in criminal proceedings in the absence of legislative authorization. (*People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534].) In coming to this conclusion, the court was "not unmindful of the almost insurmountable hurdles likely to thwart any attempts to devise constitutionally permissible discovery rules applicable to defendant or defense material." (*Id.,* at p. 54.)

The combined effect of the *Allen, Belton* and *Collie* holdings is to limit severely the ability of the state to obtain an individual's unwilling assistance in convicting him of a crime. The limiting effect of these cases operates whether the prosecution seeks discovery directly from the accused or whether the pros-

---

probation may be revoked only upon conviction for the offense. (Criminal Justice Act (1948) pt. I, § 8.)

It also appears to be the standard policy of the United States Probation Office to postpone probation revocation proceedings until after disposition of related criminal charges. (In *United States* v. *Bazzano* (3d Cir. 1982), opn. vacated, rehg. granted, testimony of a probation officer described the policy of the U.S. Probation Office in regard to timing of revocation proceedings.)

ecution seeks to require the accused to specify defects in the prosecution's case.[4]

Thus, the assumption of the court in *Coleman* that its rule would fully protect the constitutional rights of the probationer must be examined in light of the subsequent holdings in *Allen, Belton* and *Collie*.

It is clear that the extent of discovery provided to the state in a pretrial revocation hearing vastly exceeds the scope of discovery at issue in *Allen, Belton* and *Collie*. Not only is the prosecution able to obtain the names of defense witnesses, but the state is given pretrial access to the substance of their testimony as well as the opportunity to cross-examine them. In fact, the pretrial revocation procedure presents the prosecution with an opportunity effectively to depose the accused and his witnesses prior to trial on the underlying charges. If the privilege protects an accused against being compelled to reveal even the names of his witnesses prior to calling them to testify at his trial (*Allen*) and if it shields him against having to specify defects in the prosecution's case at that trial (*Belton*), then surely it must protect an individual from having to present his entire defense at a pretrial inquiry.

Respondent argues that the probationer is not required to testify or to present evidence at the revocation hearing. Thus, he may choose to remain silent. And if he is concerned about revealing defense theory or strategy in regard to the underlying criminal proceedings that is the "choice" he must make. But such a "choice" is in reality no choice at all. (See *Simmons* v. *United States* (1968) 390 U.S. 377, 393-394 [19 L.Ed.2d 1247, 1258-1259, 88 S.Ct. 967].) It virtually guarantees that the allegations against the probationer will be found to be true—even when in fact they are not. Neither the state nor the individual has an interest in such inaccurate factfinding.

By discouraging the probationer from presenting a defense at the revocation hearing, the pretrial revocation process impairs both the probationer's and the state's interests in a revocation decision based upon accurate findings of fact and the informed use of discretion. (See *Coleman, supra,* 13 Cal.3d at p. 873.) Furthermore, the burden placed upon the probationer's right to speak in his

---

[4]*Allen* is particularly significant for it underscores the court views as enunciated in *Coleman*. In *Allen,* the court recognized that substantial benefits would inure to the prosecution even where it obtained *only* the names of defense witnesses, much less access to their testimony, before trial. "For example, if the defense witnesses identified are friends or relatives of an accused, the prosecution can anticipate an alibi defense; if police officers the defense of entrapment can be projected." (*Allen* v. *Superior Court, supra,* 18 Cal.3d at p. 526, fn. 4.)

The *Coleman* rule, despite the fact that it prohibits use of the probationer's testimony and "the fruits" thereof, simply could not protect against this type of discovery, which effectively allows the prosecutor to become aware of the basic defense strategy without making any improper use even of "fruits" of the probationer's revocation hearing evidence.

own behalf at the revocation hearing does not comport with the standards of "basic fairness" implicit in the rehabilitative aspect of probation. (*Id.*, at p. 874.) Finally, by compelling the probationer to elect between (1) defending himself and providing discovery to the prosecution on any pending charges or (2) remaining silent and by so doing facing certain revocation, the pretrial revocation process offends the policies underlying the California Constitution's protection against self-incrimination.

Such a procedure violates article I, section 15 of the California Constitution, which guarantees the privilege against self-incrimination, and article I, section 7, subdivision (a) of our state Constitution, which guarantees the right to due process of law.

I would specifically disapprove the practice of scheduling revocation proceedings, without the probationer's consent, prior to the conclusion of concurrent, related criminal proceedings.[5] Upon timely motion by the probationer, probation revocation proceedings scheduled prior to trial should be continued until after the termination of the related criminal proceedings.

### III.

The trial court erred in refusing to grant appellant's motion to continue his revocation hearing until the pending criminal charges, which were the sole basis for the revocation of his probation, were resolved. Since appellant's motion was improperly denied and he was constrained from defending against the alleged probation violation, I would vacate the order revoking his probation.

**BROUSSARD, J.**—I dissent. We should exercise our supervisory power over courts to hold that probation revocation hearings, absent good cause or waiver by the defendant, must be held after trial on related criminal charges.

We first sought to protect the rights of the probationer in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024] by using our supervisory power to render testimony offered by a probationer at his revocation hearing inadmissible in a subsequent criminal trial. We recognized that "[w]hen a pending or potential criminal charge forms the basis of an alleged violation of a condition of probation, a probationer who can explain his actions

---

[5]Penal Code section 1203.2 permits a revocation to take place where a probationer has "subsequently committed other offenses, regardless whether he has been prosecuted for such offenses." My views would not preclude the continued operation of this provision of Penal Code section 1203.2. However, should probation revocation be sought prior to the filing of charges on the underlying offense or prior to the resolution of the pending charges related to the underlying offense, then I would not permit the prosecution of the underlying criminal charges absent a waiver by the probationer.

only by jeopardizing his chances of acquittal at a subsequent criminal trial may understandably feel that his opportunity to be heard is more illusory than real and that he is being deprived of his liberty *without one of the essential elements of rudimentary fairness*—a meaningful chance to speak on his own behalf. Moreover, the deterrent effect of concurrent criminal liability also serves to defeat the intelligent and just exercise of the court's broad discretion in a probation revocation proceeding by impairing the accuracy and restricting the scope of the factfinding process. . . . [Mitigating evidence presented by the probationer] is just what is most likely to be withheld from the court by virtue of the probationer's fear of self-incrimination, since mitigating evidence often involves damaging factual admissions coupled with more or less compelling moral excuses." (P. 874.)

The probationer would have faced an intolerable predicament had we allowed his testimony at the revocation hearing to be used in a subsequent criminal trial. "Whenever a probationer is charged with a criminal offense the People may, by the simple device of moving to revoke probation prior to trial, seek to force the probationer into a self-incriminatory statement at the revocation hearing. Indeed, to the extent that the object of the prosecution is simply to secure the probationer's incarceration, whether by revocation of probation or by conviction and sentencing for the new offense, the prosecution's instigation of a pretrial probation revocation hearing currently puts it in a 'tails we win, heads you lose' position vis-à-vis the probationer. Because of the inapplicability of certain evidentiary rules and the lower standard of proof obtaining at a probation revocation hearing, the People are generally more likely to achieve a probationer's incarceration through the probation revocation process than through the new prosecution and conviction. When a probationer is deterred from testifying at his revocation hearing by fears of self-incrimination at his subsequent trial, the People's chances of securing his incarceration through the revocation proceeding are further enhanced. And if a probationer does successfully fight revocation by testifying at the hearing, the People's chances of securing his conviction of a new offense will have been improved by the probationer's having been forced, in effect, to be one of the prosecution's principal witnesses in its case in chief at his trial." (Pp. 876-877; fns. omitted.)

We had hoped that our judicially imposed exclusionary rule would adequately protect the rights of the probationer. We nevertheless warned prosecutors that the better method would be to hold probation revocation hearings *after* criminal trials on related charges were completed. "[W]e wish to note that the most desirable method of handling the problems of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings." (P. 896.) Unfortunately, our advice has been ignored: in San Francisco County, revocation proceedings are held prior to criminal trials as a matter of

*routine*—such practice was erroneously approved by the Court of Appeal in *People* v. *Sharp* (1976) 58 Cal.App.3d 126 [129 Cal.Rptr. 476]. The practice apparently continues today, despite our reiteration of our admonition in *People* v. *Belleci* (1979) 24 Cal.3d 879, 888, footnote 7 [157 Cal.Rptr. 503, 598 P.2d 473].

The majority erroneously believe that *Coleman* will continue to be a viable solution to a probationer's predicament, and that courts will exercise discretion in holding revocation proceedings prior to or after criminal trial. Yet, the majority fail to recognize that *Coleman*'s exclusionary rule will be seriously questioned in a future case because the "truth in evidence" provision of the recently passed Proposition 8, now embodied in section 28, subdivision (d), article I of the state Constitution, has purportedly "repealed" such state-imposed exclusionary rules (an issue which we carefully avoid deciding today), thus rendering the majority opinion in this case useless in the immediate future.

Furthermore, the majority fail to give guidance to trial courts in the "exercise of discretion" to hold revocation hearings prior to or after related criminal trials. They do not enunciate a standard to be employed: Under which circumstances should a trial court hold the hearing before a related criminal trial? Under which circumstances should a trial court hold the hearing after the related criminal trial? We are left hopelessly guessing as to which factors signal which procedure to be employed. Indeed, the majority themselves fail to examine whether in *this* case the trial court below properly exercised its discretion.

It is clearly the time to impose a judicial rule of procedure on the timing of probation revocation hearings. We need not go so far as the Chief Justice suggests—we need not hold that the state constitutional privilege against self-incrimination requires revocation proceedings to be held after a criminal trial on related charges. In *Coleman* we exercised our supervisory power over courts to fashion the exclusionary rule; a similar use of such power seems appropriate today. We have used our supervisory power in many instances in the past: to require the reasonable doubt standard to determine the admissibility of a confession (*People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672]); to prohibit a jury instruction which encourages jurors to consider the numerical division of the jury in reexamining their views (*People* v. *Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73]); to require trial courts to render a brief statement of reasons when denying a motion for bail on appeal (*In re Podesto* (1976) 15 Cal.3d 921 [127 Cal.Rptr. 97, 544 P.2d 1297]); to prohibit city attorneys with prosecutorial responsibilities from representing criminal defendants (*People* v. *Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363]); to require representation by counsel to a probationer in a revocation proceeding (*People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]); to exclude admissions made by a minor

to the juvenile judge or the juvenile probation officer in a criminal prosecution (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575 [102 Cal.Rptr. 831, 498 P.2d 1079]); and to adopt a search and seizure exclusionary rule (prior to its imposition upon the states) (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]).

The majority have unfortunately *reversed* an otherwise appropriate rule: they allow a court to hold revocation proceedings prior to a related criminal trial upon a proper exercise of discretion. I would hold the *opposite*: that absent good cause or waiver by the probationer, the revocation proceeding be held *after* trial as a matter of course. Under such a rule, the *prosecutor,* rather than the probationer, would incur the *burden* of convincing the trial court that sufficient reasons exist to reverse the procedure.

Therefore, I would vacate the order revoking defendant's probation.

Reynoso, J., concurred.

Appellant's petition for a rehearing was denied July 20, 1983. Bird, C. J., Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.