Filed 6/28/13  P. v. Cotton CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FAYLON DENIOUS COTTON,<br><br>    Defendant and Appellant. | H038176<br>(Monterey County<br>Super. Ct. No. SS090213A) |

This appeal follows a probation revocation hearing and the subsequent sentencing hearing that occurred on February 21, 2012.

Pursuant to a plea agreement, Faylon Cotton (appellant) pleaded no contest to one count of possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)).  In exchange for his plea, appellant was promised that the court would consider placing him on probation with a prison sentence imposed, but with execution suspended; and that if the court chose not to admit appellant to probation, appellant would be able to withdraw his plea.

On March 22, 2011, the court imposed but suspended execution of a three year prison sentence and admitted appellant to probation on the conditions, among others, that he obey all laws and "not associate with any individuals who are on probation or parole."

Appellant accepted the terms of his probation. Appellant did not file a notice of appeal from this hearing.

Subsequently, on August 30, 2011, the probation department filed a notice of probation violations. The probation officer alleged that appellant had violated his probation by failing to obey all laws and by failing to refrain from having contact with his brother Kajmar Cotton.[1]

On October 18, 2011, following a contested probation revocation hearing appellant was found to have violated his probation by committing a battery on Marjorie Addison (his ex-girlfriend), and by associating with his brother contrary to the condition of probation that he not associate with anyone who was on probation or parole.

Thereafter, on December 12, 2011, appellant filed a motion to reopen the probation revocation hearing so that he could present additional witnesses. Following a hearing during which appellant's additional witnesses testified, the court denied the motion to reopen.[2]

It is with the denial of his motion to reopen the probation revocation hearing that appellant takes issue. Specifically, appellant argues that the court abused its discretion in denying the motion. In addition, appellant contends that the prohibition on his associating with his brother was unconstitutional.

For reasons that follow, we affirm the judgment.

*Facts and Proceedings Below*

Briefly, we summarize the facts underlying appellant's conviction for felon in possession of a firearm, but detail the testimony from the probation revocation hearing

---

[1]     It appears that at the time appellant's brother was a parolee. His name is spelled two different ways—Kejmar in the notice of violation of probation and Kajmar in the reporter's transcript. For the sake of consistency we will use the spelling that appears in the reporter's transcript.

[2]     Subsequently, on February 21, 2012, the court ordered execution of the previously imposed but suspended three year prison term.

2

and the testimony from appellant's additional witnesses at the hearing on appellant's motion to reopen.

*Underlying Offense*

As to the underlying offense, the probation officer's report indicates that appellant was a passenger in a Ford Explorer that was stopped for a traffic violation. After a police officer discovered that appellant had a possible failure to appear warrant and was a restrained person in a domestic violence restraining order that required him not to possess any firearms, the officer asked appellant if he had any weapons on him. When the officer told appellant that he was going to search him for weapons, appellant ran. The officer ran after appellant. As he did so, the officer saw appellant reach with his right hand for his front waistband area; the officer saw him produce a gun. The officer ordered appellant to stop; the officer told appellant that if he did not stop he would be tased. Appellant failed to comply and the officer tased him. Eventually, appellant was taken into custody.

*Probation Revocation Hearing*

Marjorie Addison testified that she had dated appellant for approximately two years and had lived with him "[o]ff and on" during that time, including in August 2011.

Addison claimed loss of memory at the probation revocation hearing, although she acknowledged that she had spoken to a Seaside police officer in August 2011. She could not remember any of the specifics of the conversation other than she went to the police station in order to get a restraining order. Repeatedly, she testified that she did not remember what she told the officer; she said she had been under the influence of alcohol and prescription medication when she spoke to the officer.

Addison testified that on the day she spoke to the officer, she was in pain from a fractured knee she had suffered after falling off her bicycle on August 20. She said she was able to go dancing at a bar with appellant that night, but the next day when she awoke her knee was hurting. She said she went to the hospital and told the doctor that she had fallen off her bike.

3

Officer Uriah Allen testified that on the evening of August 25, 2011, Addison came to the Seaside Police Department and requested to speak to an officer concerning domestic violence. Addison told him that on the night of August 20, she and appellant had had some drinks at a bar in Seaside. As they were leaving the bar, appellant became angry with her because he believed she had "disrespected him." Appellant grabbed her. As she pulled away from appellant he grabbed her again. As she tried to twist away from appellant he pushed her to the ground and she injured her knee. Addison said that appellant had "yell[ed]" at her and had both his hands around her neck. At the time Addison made the report she was using crutches. Officer Allen testified that Addison did not show any signs of intoxication when she was making the report.

A deputy probation officer testified that she arrested appellant on August 26. Appellant had a cellular telephone in his possession at the time of his arrest. On the telephone, the officer found a photograph of appellant and his brother Kajmar kneeling in front of a building. Although the officer was not sure, she thought appellant told her that the photograph had been taken a few months earlier. The officer knew that appellant's brother was on parole and that appellant was prohibited from associating with anyone who was on parole. The officer testified that in April 2011, appellant had been specifically told by his probation officer that he could not have contact with his brother when the brother was released from prison absent prior court authorization.

Detective Jackie Meroney interviewed appellant on August 31. As to the August 20 incident, appellant told her that he and Addison were leaving a bar and Addison fell and injured her ankle in the parking lot. Appellant explained that Addison was intoxicated and had been smoking marijuana. Appellant also said that Addison had fallen off her bicycle and hurt her knee. Appellant said that earlier on the day Addison went to the Seaside Police Department, he had been to Addison's house with another woman—the mother of his child—and told Addison he was moving out. Addison reacted angrily and threw some of his belongings into the yard. According to appellant, he

4

requested two "civil standbys"[3] from the police on that day so that he could retrieve the rest of his belongings from Addison's house. Appellant told Detective Meroney that on the day after this incident, he went to the Santa Cruz Boardwalk with his brother Kajmar; appellant said that Kajmar had recently been released from custody.

Appellant did not present any evidence at the probation revocation hearing. Rather counsel argued that Addison had falsely reported that appellant had assaulted her because she was angry with appellant for leaving her for another woman. As to his alleged association with his brother, counsel argued that it had not been proven when the photograph of appellant and his brother had been taken, and in any event it was a "de[] minimis type violation."

At the end of the hearing, the court found by a preponderance of the evidence that appellant committed "a battery or a 273.5(a) or a 245(a)" based on Addison's testimony and that of Officer Allen and Detective Meroney. Further, the court found that appellant associated with his brother, "contrary to the conditions of probation that he was under" based on the testimony of "probation officer Marshall" and "the pictures that were on the cell phone that was retrieved from" appellant. Based on these findings, the court found that appellant had violated his probation.

*Motion to Reopen the Probation Revocation Hearing*

As noted, appellant filed a motion to reopen the probation revocation hearing. Prior to this motion to reopen, appellant had filed a *Marsden* motion. One of the chief complaints in that motion was that his attorney had not called several witnesses to testify at the probation revocation hearing.

In appellant's motion to reopen the probation revocation hearing, he asked to present several witnesses including Katrina Cameron (the mother of his child) and the

---

[3] "A civil standby is a situation wherein an officer is present at the request of a party to a civil dispute in order to prevent violence. [Citations.]" (*People v. McElroy* (2005) 126 Cal.App.4th 874, 882.)

5

Monterey police officer who provided a civil standby when appellant retrieved his belongings from Addison's residence. In the written motion appellant asserted that his "primary complaint at the Marsden Motion was that his attorney . . . had failed to call certain witnesses in his defense" and that if the court were to permit these witnesses to testify it "would come to a different decision and he would not be found in violation."

The trial court held an evidentiary hearing on appellant's motion to reopen the probation revocation hearing at which Cameron and an Officer Ethan Andrews testified. Officer Andrews testified that on the evening of August 25, 2011, he and another officer went to Marjorie Addison's residence in response to a telephone call regarding a disturbance. Officer Andrews spoke to appellant outside the residence. Appellant told the officer that he had broken up with Addison and she would not let him inside to retrieve his belongings. Officer Andrews testified that he saw Addison "moving clothes out of the residence, occasionally throwing them off the front steps." Addison appeared angry. When he tried to speak to Addison she was "uncooperative."

Cameron testified that she and appellant "have a child together and one on the way." Cameron said that she accompanied appellant to Addison's residence twice on August 25 in order for him to get his belongings. Addison was "[a]ngry and belligerent" and threw appellant's belongings out of her residence. Cameron testified that Addison said, " 'I knew he was going to go back to your [*sic*] baby's momma, and that's what you get. You're going to prison, nigga.' "

After listening to argument from counsel, the court ruled, "[t]he only possibly different testimony you have presented today is the statement by Ms. Cameron that she had threatened to send defendant to state prison. The rest of the testimony from the officer to Ms. Cameron really is pretty similar to what I heard, what this Court heard before. [¶] And even taking all of the testimony as true by both witnesses here, I don't think that there's enough evidence presented for the Court to reopen the hearing on the probation violation matters. So the Court denies the motion to reopen at this time."

6

*Discussion*

*Denial of Motion to Reopen*

Appellant argues that the trial court abused its discretion in denying his motion to reopen the probation revocation hearing. Respectfully, we disagree.

Under section 1203.2, subdivision (e), the trial court has authority to set aside its order revoking probation "for good cause upon motion made before pronouncement of judgment." (§ 1203.2, subd. (e).)[4] Implicit in that authority is the power to reopen the revocation hearing to take additional evidence if necessary to determine the propriety of setting aside the order revoking probation. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1205 [noting that a trial court has inherent authority under Code of Civil Procedure section 128, subdivision (a)(8), to amend and control its process and orders so as to make them conform to law and justice].)

The decision to grant or deny the motion to reopen was within the discretion of the trial court. (Cf. *People v. Green* (1980) 27 Cal.3d 1, 42, overruled on other grounds in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3; *People v. McNeal* (2009) 46 Cal.4th 1183, 1202 [decision whether to reopen trial for good cause within discretion of trial court]; *People v. Jasper* (1983) 33 Cal.3d 931, 935 [timing of probation revocation hearing within discretion of trial court].)

Respondent argues "[b]y allowing appellant to present all of the evidence he wished had been presented at the initial revocation hearing, the court did, for all practical

---

4    Section 1203.2, subdivision (e) provides: "If probation has been revoked before the judgment has been pronounced, the order revoking probation may be set aside for good cause upon motion made before pronouncement of judgment. If probation has been revoked after the judgment has been pronounced, the judgment and the order which revoked the probation may be set aside for good cause within 30 days after the court has notice that the execution of the sentence has commenced. If an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period, the court may again place the person on probation for that period and with those terms and conditions as it could have done immediately following conviction."

purposes, 'reopen' the hearing. The only thing the court did not do was change its conclusion that a probation violation had been shown. No abuse of discretion appears under these circumstances."

Our review of the trial court's exercise of discretion is guided by the California Supreme Court's decision in *People v. Martinez* (1984) 36 Cal.3d 816 (*Martinez*). In *Martinez,* the defendant moved for a new trial on the ground of newly discovered evidence. (*Id.* at p. 820.) The trial court denied the motion, finding that defense counsel was not diligent in discovering the new witness. (*Id.* at p. 821.) In its analysis, the Supreme Court first considered the significance of the proffered witness, noting that numerous cases hold that a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant. (*Id.* at p. 823.)

A comparison to the facts of *Martinez* is illustrative of why the "newly discovered evidence" in this case was not sufficient for the trial court to reopen the probation revocation hearing.[5] In *Martinez* the defendant was convicted of second degree burglary. (*Martinez*, *supra*, 36 Cal.3d at p. 819.) The only evidence against Martinez was a palm print found on a newly painted drill press at the scene. (*Id.* at p. 822.) One of the employees of the burgled business testified he had painted the drill press the day before the burglary. (*Id.* at p. 819.) After trial, a defense investigator located a witness who could offer testimony the drill press was painted up to two weeks before the burglary. (*Id.* at pp. 820-821.) The Supreme Court concluded that although the jury may not have believed the second employee, that employee's testimony was exculpatory and may have raised a reasonable doubt, particularly in light of the limited evidence supporting the

_____

[5]     We assume for the sake of argument that the evidence was "newly discovered" and that appellant showed diligence in producing this evidence. (See *People v. Williams* (1962) 57 Cal.2d 263, 270 [to entitle a party to have a new trial it must appear that the evidence, and not merely its materiality be newly discovered, and the party could not with reasonable diligence have discovered and produced it at the trial].)

defendant's conviction. (*Id.* at pp. 823-824). Thus, the court held the trial court abused its discretion in not granting a new trial motion. (*Id.* at p. 827.)

Here, in contrast to *Martinez*, we cannot say that the "newly discovered evidence" contradicted the strongest evidence against appellant. At best, it confirmed appellant's statements to Detective Meroney that Addison was angry with him—thus providing a motive for her to lie—and that she threw some of his belongings into the yard. In ruling, the court considered all the evidence appellant had to offer, assumed that it was true and still found no good cause to reopen the hearing. The testimony of Cameron and Officer Andrews did not exonerate appellant. In contrast, Officer Allen's testimony provided strong evidence that Addison was hurt by appellant.[6]

Furthermore, the trial court may consider the credibility as well as materiality of the newly discovered evidence in its determination of whether introduction of the evidence in a new hearing would render a different result reasonably probable. (See, *People v. Sousa* (1967) 254 Cal.App.2d 432, 435 [the court is entitled to consider the credibility as well as the relevance of the proffered testimony in determining whether to grant a new trial motion]; *Martinez, supra*, 36 Cal.3d at p. 821 [the evidence must be such as to render a different result probable on a retrial of the cause].) Here, Cameron had a strong incentive to provide exculpatory information as she already had one child with appellant and was pregnant with another of appellant's children. On cross examination she acknowledged that she had a strong desire to reestablish a relationship with appellant; that they had talked about their plans once he was released from jail; and she would have liked to have him released from jail as soon as possible. The trial judge was well within his discretion in implicitly finding that Cameron's testimony would not have changed the result if he reopened the probation revocation hearing.

---

[6]     Addison's testimony at the probation revocation hearing that she hurt her leg from falling off her bike was not credible given that she testified that she went out dancing following the alleged fall.

9

In sum, we cannot say that it was an abuse of discretion to not reopen the probation revocation hearing. In short, we conclude that appellant has failed to demonstrate a " ' "manifest and unmistakable abuse of discretion" ' " in the trial court's denial of his motion to reopen the probation revocation hearing. (See *People* v. *Delgado* (1993) 5 Cal.4th 312, 328 [the determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears].)

*Challenge to the Probation Condition Forbidding Association with Probationers and Parolees*

Appellant contends that the prohibition on him associating with his brother was unconstitutional. We note that appellant was not prohibited from associating with his brother per se. Rather he was prohibited from associating with probationers and parolees. We find appellant's challenge to this probation condition to be untimely.

"[A] defendant who elects not to appeal an order granting . . . probation cannot raise claims of error with respect to the grant . . . of probation in a later appeal from a judgment following revocation of probation." (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421 (*Ramirez*).) Since appellant did not appeal from the March 22, 2011, order granting probation, he cannot challenge the conditions imposed pursuant to that order in this appeal from the February 21, 2012, order revoking his probation. (*Ibid.*)

This is so because "[a]n order granting probation and imposing sentence, the execution of which is suspended, is an appealable order. [Citations.]" (*Ramirez*, *supra*, 159 Cal.App.4th at p. 1421.) "In general, an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment." (*Ibid.*) As relevant here, "when a court imposes sentence but suspends its execution at the time probation is granted, a defendant has the opportunity to challenge the sentence in an appeal from the order granting probation. [Citation.] If the defendant allows the time for appeal to lapse during the probationary

10

period, the sentence becomes final and unappealable. [Citation.] This is so regardless of the fact the defendant will not serve the sentence unless the court revokes and terminates probation before the probationary period expires." (*Ibid*.)

Appellant asserts that the constitutional infirmity in the condition at issue here only "became clear" when he was found in violation of his probation even though the condition was valid when it was imposed. Citing *In re Sheena K.* (2007) 40 Cal.4th 875, 887–889, appellant argues that this court can review constitutional challenges to probation conditions involving pure questions of law. His reliance on *Sheena K.* is unavailing. In contrast to appellant, Sheena K. did not wait until her probation was revoked to challenge a probation condition. She appealed from the order that imposed that condition and challenged its constitutionality for the first time on appeal. (*Id.* at p. 878.) In that context, our Supreme Court concluded that "a challenge to a term of probation on the ground of unconstitutional vagueness or overbreadth that is capable of correction without reference to the particular sentencing record developed in the trial court *can* be said to present a pure question of law" and thus may be reviewed on appeal absent an objection in the trial court. (*Id.* at p. 887.) Appellant cites no authority for the proposition that he can challenge a condition of probation following the revocation of probation when he did not appeal the order that imposed that condition.[7]

Appellant's challenge to the probation condition prohibiting him from associating with probationers and parolees is untimely. Appellant has forfeited this challenge.

---

[7]     Furthermore, appellant's challenge to the condition is not a facial challenge; nor is it a challenge to the general rule that probation conditions may under certain circumstances prohibit association with family members. Rather it a challenge to the application of the associational limitation to this particular case and this particular brother. As such appellant's challenge does not "raise pure questions of law" involving review of only " 'abstract and generalized legal concepts . . . .' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773, fn. 3.)

*Disposition*

The judgment is affirmed.

                                        _____

                                        ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.