[No. AO17742. First Dist., Div. Two. Oct. 24, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
LYNN L. FULLER, Defendant and Appellant.

[No. AO17651. First Dist., Div. Two. Oct. 24, 1983.]

In re LYNN L. FULLER on Habeas Corpus.

**COUNSEL**

William T. Lowe, under appointment by the Court of Appeal, Ruffin & Rotwein and Geoffrey Rotwein for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ROUSE, J.**—Defendant Lynn Fuller appeals from an order denying his motion to set aside a guilty plea and a resulting conviction of assault with a deadly weapon (a knife), in violation of section 245, subdivision (a)(1),

of the Penal Code.[1] He also appeals from a subsequent order revoking his probation and sentencing him to state prison.[2]

The record reveals that on May 27, 1981, defendant entered a negotiated plea of guilty to the charge of assault with a deadly weapon. On June 24, 1981, the trial court, after reviewing the probation report, ordered the imposition of sentence suspended and placed defendant on probation for a period of three years, subject to the conditions, inter alia, that he submit to a warrantless search and that he not have in his possession any illegal narcotics or dangerous drugs.

On September 11, 1981, the district attorney filed a motion to revoke defendant's probation on the ground that he had been held to answer to the charges of passing or receiving forged bills or notes, fraudulent possession of completed checks, and possession of a concealable firearm by a felon. The motion to revoke probation was denied on October 21, 1981.

On April 1, 1982, defendant moved to set aside his 1981 guilty plea and conviction on the ground that he had entered the guilty plea in reliance upon erroneous advice as to the length of the prison sentence which could be imposed. This motion was heard and denied on April 7, 1982.

Also on April 7, 1982, the district attorney again moved to revoke defendant's probation, alleging on this occasion that defendant had been held to answer to the charges of possession for sale of a controlled substance (methamphetamine) and illegal possession of a hypodermic needle or syringe.

On May 17, 1982, a hearing was held on the district attorney's motion to revoke probation and on a motion by defendant to postpone the probation revocation hearing until after he had been tried on the criminal charges furnishing the basis for the motion to revoke probation. The court granted the former motion and denied the latter. The court then sentenced defendant to the middle term of three years on the 1981 aggravated assault conviction.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

[2] Defendant's notice of appeal also states that he purports to appeal from "the validity of his original guilty plea and resulting conviction . . . ." Since the conviction in question was rendered almost a year prior to the filing of the notice of appeal, this appeal would clearly be untimely. In any event, this language in the notice of appeal would appear to represent nothing more than an indication of the ground which defendant intends to raise on appeal from the denial of his motion to set aside his guilty plea and resulting conviction. The Attorney General tacitly concedes that such appeal is proper and that the motion to set aside the guilty plea and conviction was timely, since it was made as soon as defendant learned that he had been misadvised as to the consequences of his plea. (See *People* v. *Gage* (1981) 126 Cal.App.3d 918, 922-923 [179 Cal.Rptr. 171].)

Defendant filed a timely notice of appeal from the order denying his motion to set aside his guilty plea and conviction and from the order revoking his probation and sentencing him to prison.

Defendant's first contention on appeal is that the trial court abused its discretion in summarily denying his motion to continue the probation revocation hearing until after defendant had been tried on the criminal charges constituting the basis for the motion to revoke probation. Defendant asserts that his motion to postpone the probation revocation hearing was unopposed by the prosecution and that the trial court gave no explanation for its summary denial of such motion other than to state that its ruling was based on "the administration of the cases and the interest of justice . . . ." Defendant claims that this ruling must be viewed as arbitrary and an abuse of discretion.  ▆▆▆  At oral argument before this court, defendant also advanced the assertion that this ruling was necessarily prejudicial to him because the evidence that defendant had violated his probation would have been inadmissible for any purpose, as the product of an illegal search and seizure, if the criminal trial had been held prior to the probation revocation hearing. We agree and find this argument dispositive of the appeal from the order revoking defendant's probation and sentencing him to prison.

In *People* v. *Jasper* (1983) 33 Cal.3d 931 [191 Cal.Rptr. 648, 663 P.2d 206], the California Supreme Court recently reaffirmed the rule, previously espoused in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], that a defendant has no constitutional right to require that his probation revocation hearing be held after his trial on pending criminal charges; and that a defendant's rights are ordinarily adequately protected by a rule precluding the prosecution from using at the subsequent criminal trial any of the fruits of defense testimony presented at the probation revocation hearing. (*People* v. *Jasper, supra,* at pp. 933-935.) The *Jasper* court reiterated the language of *Coleman* to the effect that " 'the most desirable method' " was for the criminal trial to precede the probation revocation hearing; also, the *Jasper* court stated that the trial court possessed "reasonable discretion" as to the sequence of events. (*People* v. *Jasper, supra,* at p. 935.) However, in response to the defendant's assertion that the San Francisco Superior Court followed a routine practice of scheduling all probation revocation hearings in advance of trials on the criminal charges, the California Supreme Court held that even if this were the case, "we decline to reverse defendant's conviction solely on that basis, for as *Coleman* makes clear, by reason of its limited exclusionary rule, a probationer's rights are not impaired by reason of the timing of his revocation hearing." (*People* v. *Jasper, supra,* at p. 935.)

▆▆▆  In this instance, when the trial court summarily denied defendant's unopposed motion to continue the probation revocation hearing, it gave no

reason for its ruling beyond a vague reference to "the administration of the cases and the interest of justice . . . ." In view of the preference in favor of holding the criminal trial before the probation revocation hearing, it seems evident to us that the court's ruling cannot be viewed as a reasonable exercise of discretion.

Furthermore, unlike the situation in *Jasper,* we cannot conclude that the *Coleman* exclusionary rule rendered the court's ruling harmless to defendant. (*People* v. *Jasper, supra,* 33 Cal.3d 931; *People* v. *Coleman, supra,* 13 Cal.3d 867.) To the contrary, in view of the different standards governing the admissibility of evidence at a criminal trial and at a probation revocation hearing, we have concluded that there is a very substantial possibility that defendant was prejudiced by the court's ruling.

■ It is settled that a more lenient rule for the admissibility of evidence applies at a probation revocation hearing than at a criminal trial, and that evidence obtained in an illegal search and seizure will be held inadmissible at a probation revocation hearing only in the face of police conduct so egregious as to offend the traditions and collective conscience of our people or to shock the conscience. (*In re Martinez* (1970) 1 Cal.3d 641, 649-652 [83 Cal.Rptr. 382, 463 P.2d 734]; *People* v. *Nixon* (1982) 131 Cal.App.3d 687, 691 [183 Cal.Rptr. 878]; *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 609-610 [86 Cal.Rptr. 726].) However, it is also the rule that when a defendant successfully moves to suppress evidence at a criminal trial, that evidence cannot thereafter be utilized at a probation revocation hearing. Section 1538.5, subdivision (d), provides that evidence which is ordered suppressed pursuant to that statute shall not be admissible against the defendant "at any trial *or other hearing* . . . ." (*People* v. *Belleci* (1979) 24 Cal.3d 879, 883-888 [157 Cal.Rptr. 503, 598 P.2d 473]; *People* v. *Zimmerman* (1979) 100 Cal.App.3d 673, 675-676 [100 Cal.Rptr. 673, 161 Cal.Rptr. 188]; italics added.)

In this instance, the evidence upon which the court based its decision to revoke defendant's probation was obtained in a search which was not conducted in so objectionable a manner as to render it inadmissible at a probation revocation hearing. ■ However, the search may well have been illegal due to the officers' lack of probable cause to believe that the property seized, a syringe and methamphetamine concealed in a radio, belonged to defendant rather than to one of the other occupants of the hotel room. Assuming that the search did suffer from such a constitutional defect, then, had his trial on the criminal charges been held prior to his probation revocation hearing, defendant might have successfully moved to suppress the evidence obtained in the illegal search, thereby rendering it inadmissible both at the trial and the probation revocation hearing. Thus, in this instance,

the denial of defendant's motion to continue the probation revocation hearing may well have been highly prejudicial to him, since the granting of his motion to suppress would have furnished him with an impregnable defense against both the criminal charges and the motion to revoke his probation.

The record reveals that the motion to revoke defendant's probation was submitted for decision, pursuant to stipulation, on the basis of the preliminary hearing transcript. The evidence produced at that hearing shows that undercover officers, acting on a tip from an unnamed and untested informant, went to room 309 of the Ambassador Hotel where, through an open door, they observed defendant and three other persons sitting in the room with a syringe in plain view. The officers first entered the room, next identified themselves as police and then arrested defendant. The police then searched the room and found two small plastic bags concealed inside the battery compartment of a radio on a ledge five feet from defendant. The plastic bags were subsequently found to contain methamphetamine.

█ Defendant contends that the police search of the hotel room exceeded the scope of his probation search condition, since it has been held that a search conducted pursuant to a probation search clause must be confined to the probationer, his property and his residence. (*People* v. *Veronica* (1980) 107 Cal.App.3d 906, 909 [166 Cal.Rptr. 709].) It is also the rule that when police officers do not know who owns or possesses a residence or item and such information can easily be ascertained, it is incumbent upon them to attempt to ascertain ownership in order to protect the privacy interests of both probationer and nonprobationer. (*People* v. *Tidalgo* (1981) 123 Cal.App.3d 301, 306-307 [176 Cal.Rptr. 463].) █ Defendant argues that in the absence of a reasonable belief that the hotel room was his residence, the police had no valid reason to believe that the syringe or the methamphetamine secreted in the room's radio belonged to defendant. We agree.

The record reveals that the police did not check the hotel registration until after the search, and that they then discovered that the room was rented in the name of defendant's girlfriend. However, the arresting officer testified that defendant had previously told him that he was staying there with his girlfriend. Unfortunately, the record does not indicate whether the officers obtained this information before or after they searched the room.

In *People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 585 [139 Cal.Rptr. 637], the appellate court held that, in light of the officers' knowledge that the defendant had a search condition on his parole and was apparently involved in sales of narcotics, any search of premises occupied by defendant would be a reasonable exercise of the search condition of his parole. How-

ever, *Icenogle* and other similar decisions are readily distinguishable in that the evidence in those cases unambiguously established that the police had information, *prior to the search,* which justified a reasonable belief that defendant was at least temporarily living at the residence searched. (*People* v. *Palmquist* (1981) 123 Cal.App.3d 1, 11-12 [176 Cal.Rptr. 173]; *People* v. *Spratt* (1980) 104 Cal.App.3d 562, 566, 568 [164 Cal.Rptr. 78].)

If there was substantial evidence in this record to sustain the inference that, prior to the search, the police reasonably believed that defendant occupied the hotel room with his girlfriend and that all portions of the hotel room were jointly occupied, we could uphold the trial court's conclusion that the police had reasonable cause to believe that defendant possessed the syringe and the radio where the methamphetamine was found. (*People* v. *Palmquist, supra,* 123 Cal.App.3d 1, 13-14.) However, we find the record devoid of any substantial evidence that, prior to the search, the police had reliable information from any source to reasonably entertain that belief.

Since the evidentiary record before us is confined to the transcript of the preliminary hearing, we cannot know whether the ambiguities surrounding the search would be resolved in a manner more favorable to the prosecution at a suppression hearing preceding defendant's trial on the criminal charges. It is possible that the evidence produced at the hearing would establish that the police searched the room and its contents before learning that defendant was living there with his girlfriend. In view of such a possibility, with the resulting inadmissibility of the contraband found in the room, we must conclude that, in this instance, the denial of defendant's motion to continue the probation revocation hearing until after the trial on the underlying criminal charges constitutes prejudicial error.

■ Defendant contends that the denial of his motion to set aside his 1981 guilty plea was error because he entered that plea in reliance upon erroneous representations by his defense counsel, made in open court, as to the possible sentences for aggravated assault.

The record shows that defense counsel stated that the possible sentences for aggravated assault were sixteen months, two years or three years, whereas in fact, the true range of sentences prescribed by section 245, subdivision (a)(1), was two years, three years or four years. Defendant contends that when he learned that he had been misadvised in this regard and moved to vacate the guilty plea and conviction of aggravated assault, the court should either have granted this motion or should have complied with the erroneous representations when it sentenced defendant after revoking his probation. He reasons that since the sentencing judge expressed the

desire to impose the middle sentence, it should have selected the two-year middle term which had been represented to him rather than the true middle term of three years.

This argument is without merit. In *People* v. *Jones* (1982) 128 Cal.App.3d 253 [180 Cal.Rptr. 228], the defendant entered a negotiated plea of guilty subject to the condition that he would not receive a prison sentence in excess of two years. (*Id.,* at p. 257.) In fact, the defendant received even more favorable treatment and was placed on probation. (*Ibid.*) However, when he was subsequently found to have violated his probation, he was sentenced to the upper term of three years. (*Ibid.*) On appeal, the defendant claimed that the imposition of this sentence violated the terms of the original plea bargain as represented to him. (*Id.,* at p. 254.) In rejecting this argument, the appellate court held that the terms of the defendant's plea bargain had been fulfilled when he was initially placed on probation. (*People* v. *Jones, supra,* 128 Cal.App.3d 253, 262.) The court then went on to state, "Judge DeCristoforo, one of the arraigning judges, perceptively noted that 'it does not seem to me to be correct that the original limitation shall then be a perpetual all-time license to the defendant to engage in criminal activity thereafter, or otherwise violate his probation.' Neither does it to us. A consummated plea bargain does not insulate a defendant from the consequences of his future misconduct. A defendant gets the benefit of his bargain only once. Like time, a plea bargain once spent is gone forever." (*Ibid.*)

In this instance, as in *People* v. *Jones, supra,* 128 Cal.App.3d 253, it is apparent that defendant received the full benefit of his plea bargain when he was placed on probation in 1981, and that he was not entitled to preferred treatment upon the revocation of his probation in 1982.

Finally, we note that defendant has filed a petition for a writ of habeas corpus, renewing the claim that the imposition of the three-year prison sentence was improper because it was contrary to the representations made to defendant when he entered his guilty plea. Obviously, this argument is no more plausible when raised by way of a petition for an extraordinary writ than it is when raised on appeal.

The order denying defendant's motion to set aside his 1981 guilty plea and conviction is affirmed. The 1982 order revoking his probation and sentencing him to state prison is reversed and the matter remanded to the trial

court for further proceedings. Defendant's petition for a writ of habeas corpus is denied.

Kline, P. J., and Miller, J., concurred.

A petition for a rehearing was denied November 23, 1983, and appellant's petitions for a hearing by the Supreme Court were denied December 22, 1983.