[Nos. F003092, F003667. Fifth Dist. Nov. 26, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
CALVIN RAY HOWARD, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Nancy Sweet, Wanda Hill Rouzan, James T. McNally and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HAMLIN, J.—Defendant was convicted on his guilty plea of grand theft (Pen. Code, § 487, subd. 1)[1] after the trial court denied his motion to suppress evidence alleging the warrantless search of his residence had been unreasonable. He was sentenced to the aggravated term of three years for grand theft, plus an additional consecutive year for an admitted prior prison term within the meaning of section 667.5, subdivision (b), for a total of four years. Before entry of defendant's guilty plea, the trial court had revoked his probation for an earlier conviction of possession of methamphetamine (Health & Saf. Code, § 11377) based on the pending grand theft charge. Defendant was sentenced to state prison for a term of two years for the probation violation. Under defendant's plea bargain, any prison sentence for his conviction of grand theft was to run concurrently with time imposed for the violation of probation. Defendant appealed from both judgments, and his appeals were ordered consolidated.

Defendant contends the trial court abused its discretion in denying his motion to have the probation revocation hearing after or along with the jury trial on the charge of grand theft. Additionally, defendant urges the trial court erred in denying his motion to suppress evidence relating to the grand theft charge. We agree and reverse both judgments.

THE FACTS

Between 4 p.m. on June 29 and 5:30 a.m. on June 30, 1983, the batteries were removed from 18 United States Post Office jeeps parked at the Oildale branch station. The batteries had the initials USPO in blue lettering on the side. In his report to the police, the branch supervisor estimated the value of the batteries, as well as the damage done to the jeeps, at $750.

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

Acting on a tip received from Officer Porter, Officer Lacertoso contacted defendant on July 22, 1983, when defendant made a court appearance. In the course of Lacertoso's later interrogation of defendant, Lacertoso learned that defendant was on formal probation.

Although defendant initially expressed willingness to let Lacertoso search his house, he later withdrew his consent. Lacertoso then contacted Steven Williams of the Kern County Probation Department and asked him whether defendant, an active probationer, was subject to a search clause. Williams checked his records and responded affirmatively. Williams did not mention any restriction or limitation on the search clause. In fact, the search clause to which defendant was subject was expressly limited to narcotics and dangerous drugs, and this restriction was reflected in the records of the probation office. Williams asked Lacertoso why he was inquiring. Upon his advice that he was investigating a theft, Williams volunteered to assist Lacertoso in the search of defendant's residence.

While at the police station, Lacertoso and Williams searched defendant's vehicle and found no evidence of contraband. Lacertoso then told defendant that he and Williams would follow defendant to defendant's residence where they intended to conduct a similar search. After defendant in his vehicle succeeded in losing Lacertoso and Williams in their vehicle, Deputy Sheriff Rude found defendant hiding behind some bushes. Rude arrested defendant, and at Lacertoso's request, transported him back to the jail. Meanwhile, Lacertoso and Williams proceeded to defendant's residence. Once there, they advised defendant's wife of their intent to conduct a probationary search of the residence. In the search, Williams discovered a loaded handgun, as well as some marijuana residue and three heart-shaped pink pills. Lacertoso located in a closet seven batteries apparently stolen from the United States Post Office at Oildale.

## DISCUSSION

The issues in this case center around the validity of the warrantless search of defendant's residence. Defendant challenged this search in both the probation revocation hearing and in the underlying criminal proceeding. The challenge in the probation revocation hearing came first only because the trial court denied defendant's motion to have that hearing either concurrently with or following the trial in the criminal proceeding. In denying that motion, the trial judge stated his belief that a suppression motion in the underlying criminal proceedings would probably be successful. However, a different judge eventually considered defendant's suppression motion and denied it.

It is apparent that defendant's appeal in each case must ultimately be decided based on the validity of the warrantless probationary search of defendant's residence and the applicability of any "good faith" exception to the exclusionary rule. Accordingly, we first consider defendant's appeal from his conviction, pursuant to his guilty plea, of theft in violation of section 487, subdivision 1.[2]

## I.

### MOTION TO SUPPRESS IN TRIAL OF GRAND THEFT CHARGE

Defendant first argues the trial court's determination, i.e., the search of defendant's residence was valid because of Lacertoso's good-faith belief he had a right to search that residence for stolen property, is not binding on this court. We agree.

The trial court's ruling on the motion to suppress was based on facts not in dispute. In that circumstance it is the ultimate responsibility of this court to measure those undisputed facts against constitutional standards. This responsibility is clear from our Supreme Court's opinion in *People* v. *Aldridge* (1984) 35 Cal.3d 473 [198 Cal.Rptr. 538, 674 P.2d 240]. There the court stated: "The general rule that every presumption on appeal favors the trial court's findings of fact does not apply to rulings on questions of law. [Citations omitted.] Because the facts bearing on the legality of the detention in this case are undisputed, there is no factual issue entitled to a substantial evidence standard of review; rather, it is the ultimate responsibility of this court to measure the facts as found by the trier against constitutional standards. [Citation omitted.]" (*Id.,* at p. 477.)

Factually, it is undisputed that defendant was convicted in 1982 of possessing a small quantity of methamphetamine. The probation department recommended, and the court granted, probation with the imposition of a search condition restricted to narcotics or dangerous drugs. Defendant was on probation and subject to the restricted search condition at the time Lacertoso and Williams made the warrantless search of his residence.

The power of the trial court to impose conditions, including so-called search clauses, incident to a grant of probation is well established. The power is founded in section 1203.1, and the Supreme Court has said such a condition is valid unless it " '(1) has no relationship to the crime of which

---

[2]Because this appeal involves only the denial of a motion to suppress evidence, no certificate of probable cause is necessary. (Cal. Rules of Court, rule 31(d).)

the defendant is convicted, (2) relates to conduct that is not itself criminal [and] (3) requires or forbids conduct that is not reasonably related to future criminality. [Citation.]' " (*People* v. *Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630], as disapproved and corrected by *People* v. *Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545].) Conditions of probation subjecting the probationer to warrantless searches of his person or residence suffer from no constitutional infirmity so long as they comport with the requirements of *Mason, supra,* and, once imposed, such conditions result in a reduced expectation of privacy in the probationer. (See also this court's opinion in *People* v. *Britton* (1984) 156 Cal.App.3d 689, 696-697 [202 Cal.Rptr. 882]; *People* v. *Icenogle* (1977) 71 Cal.App.3d 576 [139 Cal.Rptr. 637].)

The reduced expectation of privacy which results from the search condition of probation is similar to that which results from the conditional nature of a parolee's freedom. (See *People* v. *Mason, supra,* 5 Cal.3d at pp. 764-765.) In neither case, however, is the power of parole or probation officers to conduct such searches unlimited. Some of the limitations were noted by our Supreme Court in *In re Martinez* (1970) 1 Cal.3d 641, 647, footnote 6 [83 Cal.Rptr. 382, 463 P.2d 734]: "Searches by parole officers pursuant to their duties, just as other administrative searches [citation omitted] are subject to the broad reasonableness requirement of the Fourth Amendment. [Citations omitted.] The conditional nature of a parolee's freedom may result in some diminution of his reasonable expectation of privacy and thus may render some intrusions by parole officers 'reasonable' even when the information relied on by the parole officers does not reach the traditional level of 'probable cause.' A diminution of Fourth Amendment protection, however, can be justified only to the extent actually necessitated by the legitimate demands of the operation of the parole process [citations omitted]. When a police officer is not aware that a suspect is on parole, or is not investigating a parole violation, an intrusion into the parolee's privacy cannot be properly justified by the needs of the parole system. [Citation omitted.]"

█ Thus it is clear that even though defendant was on probation and his probation included a restricted search condition, the requirement remained that law enforcement officers execute the search condition only in a reasonable manner. Because in the hearing on defendant's motion to suppress evidence in the criminal trial the prosecution relied upon Lacertoso's "reasonable" good-faith mistake to sustain the search, the *reasonableness* of the search becomes critical.

As previously stated, Lacertoso undertook his investigation of defendant exclusively in connection with the theft of the jeep batteries from the Oildale

post office. At the time his suspicions focused on defendant, Lacertoso did not know defendant was on probation nor was he aware defendant was subject to a search clause, either general or limited. Upon learning of defendant's status as a probationer, Lacertoso telephoned Williams at the Kern County Probation Department to inquire whether defendant was subject to search. Since Williams was not regularly assigned to defendant, probationers being handled in his office on a rotating basis, Williams testified he would have checked one of three records prior to answering this question. These records all indicated defendant was subject to a *limited* search clause—the limitation being for dangerous drugs or narcotics. However, Williams responded to Lacertoso, without reference to the limitation, that defendant was, indeed, subject to search. When Williams was cross-examined about his record check and his failure to advise Lacertoso that any search was limited to illegal drugs, Williams responded, "If I had looked at it carefully and had it in mind I had to distinguish between the two, yes, but I didn't." Thus the best that can be said of Williams' conduct is that it was negligent; at worst, he saw the limitation on the search clause and made a determination that the limitation was of no legal effect.

Notwithstanding Williams' conduct, the trial court found that Lacertoso, who conducted the search which disclosed the stolen batteries, had a "good faith belief that he had a right to search Defendant Howard's residence for stolen property." The court further found that Lacertoso's "good faith belief was reasonable, although factually mistaken, in that he check[ed] with the proper person to determine whether he had the right to search, and he advised that person as to what he wanted to search for, i.e., stolen batteries, and was not advised that his right to search did not extend to a search for stolen property, . . ."

Initially we note that California has not adopted, per se, any good-faith exception to the exclusionary rule or, to state the premise conversely, a "doctrine limiting the exclusionary rule to searches and seizures conducted 'in bad faith.'" (*People* v. *Teresinski* (1982) 30 Cal.3d 822, 831, fn. 6 [180 Cal.Rptr. 617, 640 P.2d 753].) Nonetheless, several cases have excused otherwise illegal searches founded upon a "reasonable good-faith mistake of fact." Apparently attempting to avoid application of the doctrine of those cases, defendant in the instant case has argued vigorously that Lacertoso's mistaken belief in his right to search defendant's residence was a mistake of law. This argument begs the question, however, in that the seminal issue is that of *reasonableness*.

In *People* v. *Hill* (1968) 69 Cal.2d 550 [72 Cal.Rptr. 641, 446 P.2d 521], the Supreme Court concluded: "In summary, we hold that the reasonable but mistaken beliefs of the police did not render their conduct unreasonable

in a constitutional sense. Mistake of identity does not negate probable cause to arrest, and a search based on a valid but mistaken arrest is not unreasonable as an unwarranted invasion of either the arrestee's or the defendant's privacy." (At p. 555.)

The foundational determination on which the court necessarily rested its holding in *Hill* was that the mistake of the arresting officer was a *reasonable* one. In that case the police, with uncontroverted probable cause, arrived at the apartment of the defendant to arrest him for a robbery. The door was opened by a man fitting exactly the description the police had of the robber. This man, one Miller, was arrested, and defendant Hill's apartment was searched incident to the arrest. The court stated in part, "Furthermore, the evidence shows that Gastaldo [the arresting officer] honestly and reasonably believed that the man he placed under arrest *was* Hill. Authority is sparse, but it appears that the arrest of Miller, whom the police reasonably believed to be Hill, was valid." (69 Cal.2d at p. 553.) This rationale from *Hill* was relied upon in *People* v. *Tellez* (1982) 128 Cal.App.3d 876, 880 [180 Cal.Rptr. 579], for the premise that the California Supreme Court had accepted a good-faith exception to the exclusionary rule. We note, however, that the decision in *Tellez* was published in the same month as *People* v. *Teresinski, supra,* and thus the *Tellez* court was without the clear indication from the California Supreme Court itself in *Teresinski* that it had adopted no such policy.

*Tellez* and a case decided two months later, *People* v. *Washington* (1982) 131 Cal.App.3d 434 [186 Cal.Rptr. 3], provided the trial court legal authority for its determination that Lacertoso's actions did not render the search invalid. Significantly, both *Tellez* and *Washington* involved searches of parolees or probationers subject to a general search condition incident to their release. Additionally, in both cases the status of the parolee or probationer was altered by judicial proceedings which occurred after the search, with the legal effect that neither the parolee in *Tellez* nor the probationer in *Washington* was, in fact, on such status at the time of the search and was therefore not subject to search solely as a condition of probation or parole.

In both *Tellez* and *Washington* the appellate courts affirmed the decisions of the trial courts that each searching officer had acted in good faith, and thus the evidence did not have to be suppressed.

In *Tellez,* defendant's parole had been extended in reliance upon a statute; subsequent judicial interpretation of that statute rendered retroactive application of the statute invalid, thus operating to terminate the defendant's parole at a date prior to the challenged search. In *Washington,* no such

clearcut "error of law" appears, but it is clear that defendant's status could not be altered by merely correcting the records existing at the time of the search but depended upon the outcome of a judicial hearing brought to clarify defendant's status. The court in that case noted the difficulty in differentiating between errors of fact and errors of law in a given situation and also noted that " '[c]ourts on strong policy grounds have generally refused to excuse a police officer's mistake of law.' " (*People* v. *Washington, supra,* 131 Cal.App.3d at p. 439.)

The court then assumed the error was one of law and went on to consider whether exceptional circumstances were present which would forestall suppression of the evidence seized. (The question of exceptional circumstances was left open by the California Supreme Court in *People* v. *Teresinski, supra.*) The court found the exceptional circumstances in that everyone concerned, the probation officer, the police, and the defendant himself, all believed defendant was subject to search at the time the challenged search was conducted. On that basis the court concluded, "Surely the application of the exclusionary rule to the facts of this case serves neither to deter unlawful police activity, preserve the integrity of the judicial process, nor advance the cause of a free society an iota." (*People* v. *Washington, supra,* 131 Cal.App.3d at p. 440.)

In *United States* v. *Williams* (5th Cir. 1980) 622 F.2d 830 the court reached a result similar to that in *People* v. *Washington, supra,* 131 Cal.App.3d 434. In *Williams,* a Drug Enforcement Administration (DEA) agent arrested a woman at an airport whom the agent knew to be on parole from another jurisdiction, a condition of which was that she not leave the paroling jurisdiction. Being familiar with the statute rendering such disobedience of a court order criminal contempt, the DEA agent arrested and searched the woman. The search turned up large quantities of contraband. The 24-member Fifth Circuit Court of Appeals, sitting en banc, ruled 13 to 11 that (1) the DEA agent had correctly interpreted his authority to arrest for a criminal contempt against the government of the United States and, furthermore, (2) even if the DEA agent had no such authority, his reasonable underlying good-faith belief that he did rendered the evidence he seized on that basis admissible in a criminal prosecution. The court concluded: "Henceforth in this circuit, when evidence is sought to be excluded because of police conduct leading to its discovery, it will be open to the proponent of the evidence to urge that the conduct in question, if mistaken or unauthorized, was yet taken in a reasonable, good-faith belief that it was proper. If the court so finds, it shall not apply the exclusionary rule to the evidence. . . .

"Predictably, it will be argued that today's decision undercuts the fourth amendment. Not so; it concerns only the exclusionary rule, one device—

but not the sole one—for enforcing the amendment, and a device that is already far from co-extensive with the amendment itself. As for the exclusionary rule, insofar as we restrict its application, we do so only to conform that to its underlying purpose: to deter unreasonable or bad-faith police conduct." (*United States* v. *Williams, supra,* 622 F.2d at pp. 846-847.)

Throughout these cases, a key word, if not the determinant word, is *reasonable*. ▇ Just as the Fourth Amendment forbids unreasonable searches and seizures, so the exclusionary rule was instituted to deter unreasonable or bad faith police conduct. The California Supreme Court in *People* v. *Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761] has applied this doctrine and its underlying rationale in holding that an arrest is invalid if based solely on a warrant which has been recalled at the time of the arrest. The court reached that conclusion notwithstanding the fact that the arresting officer believed the warrant to be valid. The critical significance of the holding in *Ramirez* to the instant case lies in the application of the "fellow officer" or "collective knowledge" rationale. This line of reasoning ascribes to an officer making an arrest pursuant to a warrant the collective knowledge of the law enforcement agencies and individuals through whom the information sustaining the warrant has passed. If there is a defect in that chain of information, the good faith of the executing officer does not operate to validate the arrest. Before reaching its conclusion, the Supreme Court in *Ramirez* reviewed *substantial* federal authority in which arrests based on recalled or otherwise invalid warrants were invalidated on the rationale it adopted.

Additionally, the Supreme Court in *Ramirez* considered relevant California authority and disapproved the principal case, *People* v. *Marquez* (1965) 237 Cal.App.2d 627 [47 Cal.Rptr. 166], to the extent that case authorizes reviewing courts to look "only to the perceptions of the officer in the field, rather than trace his probable cause determination to its source in the law enforcement system . . . ." (*People* v. *Ramirez, supra,* 34 Cal.3d at p. 550.) The court then concluded: "We hold that an arrest based solely on a recalled warrant is made without probable cause. The fruits of a search incident to such an arrest must, then, be suppressed. Although in this case the arresting officer no doubt acted in good faith reliance on the information communicated to him through 'official channels,' law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility.

"We stress that we are not requiring the officer in the field to anticipate a subsequent court ruling on the validity of an ordinance, as in *DeFillippo*

[*Michigan* v. *DeFillippo* (1979) 443 U.S. 31 (61 L.Ed.2d 343, 99 S.Ct. 2627)]. That is not the case before us. Here we decline only to validate an arrest made on the basis of data which a law enforcement agency knew or should have known were in error because of inadequate or negligent record-keeping. The test, under these circumstances, is not merely the good faith of the individual officer in the field, but the good faith of law enforcement agencies of which he is a part." (*Id.*, at p. 552.)

The important policy considerations underlying the rule announced in *Ramirez* are plain. If negligent or inadequate recordkeeping is excused merely because a fellow officer is dispatched to make an arrest or, by analogy, effectuate a search without actual knowledge of the negligence, inaccuracies, or inadequacies in the recordkeeping procedure, important safeguards now in place to protect the rights guaranteed by the Fourth Amendment will be lost. Additionally, it may be argued that law enforcement agencies will be encouraged by such excuse to be less than meticulous in maintaining and checking their records. We doubt this result was ever contemplated by any California authority recognizing a good-faith exception to the exclusionary rule, whether express or implied in the excuse of "good-faith mistakes of fact," as in *People* v. *Hill, supra,* 69 Cal.2d at page 555.

 In the instant case there is not even a question of negligence in the maintenance of the records dealing with defendant's probation, as the documents presented to Williams at the hearing and to which he testified he would have referred in responding to Lacertoso's inquiry all reflect that the search condition incident to defendant's probation was a limited one—i.e., restricted to narcotics and dangerous drugs. It was Williams' own negligence or lack of concern which led him to inform Lacertoso that defendant was subject to a general search. Williams knew Lacertoso was investigating a burglary; he knew Lacertoso was looking for stolen property; and he voluntarily accompanied Lacertoso to search for "whatever I could find, drugs."

Despite the expressly restricted search clause applicable to defendant, the trial court found that Williams had the right to search, *as he did,* for drugs. However, the trial court did not attempt to rely on Williams' authority to search for drugs as justifying Lacertoso's presence in defendant's residence to search specifically for stolen batteries. Probation searches which are merely a subterfuge for a warrantless search not otherwise authorized have been condemned. (See generally, *United States* v. *Hallman* (3d Cir. 1966) 365 F.2d 289, 292; *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160, 167 [108 Cal.Rptr. 716].) Moreover, we believe that the trial court's conclusion that Lacertoso had a good-faith belief he was authorized to search defendant's residence *and* that this belief was reasonable flies in

the face of the Supreme Court's decision in *People* v. *Ramirez, supra,* 34 Cal.3d 541. The information on which Lacertoso was relying had been relayed to him through official channels—i.e., defendant's probation officer. Williams' negligence in checking defendant's records and then advising Lacertoso that defendant was subject to a general search clause is imputed to Lacertoso—i.e., Williams knew or should have known that the search clause incident to defendant's probation was a restricted one, and Lacertoso's general search incident to that clause was therefore unreasonable.

The People argue that *Ramirez* is inapplicable to the instant case as it had not been decided at the time the instant search was conducted and thus Lacertoso was justified in relying on existing authority such as *People* v. *Marquez, supra,* 237 Cal.App.2d 627. This argument ignores the Supreme Court's willingness to retroactively invalidate the arrest of Ramirez himself, notwithstanding the arresting officer's presumed reliance on pre-*Ramirez* case law. The decision in *Ramirez* contains no indication that it signals such a departure from established law—i.e., the prohibition against unreasonable searches and seizures—that it is to have prospective effect only; therefore, the People's argument is not persuasive.

Finally, even assuming that the truth-in-evidence provisions of Proposition 8 are applicable in the instant case and supplant otherwise relevant California authority with the appropriate federal law, the same result obtains. Most recently, in *United States* v. *Leon* (1984) — U.S. — [82 L.Ed.2d 677, 104 S.Ct. 3405], the United States Supreme Court adopted a "good-faith exception" to the exclusionary rule. That court held that evidence need not be suppressed when such evidence has been seized pursuant to execution of a search warrant, valid on its face and on which the police in good faith reasonably relied, notwithstanding a subsequent judicial determination that the warrant itself was invalid. The good-faith exception to the exclusionary rule recognized in *Leon* requires "[1] a reasonable belief, as well as [2] a good-faith belief, on the part of law enforcement officials." (*United States* v. *Williams, supra,* 622 F.2d at p. 844.)

Specifically, in *Leon* the Supreme Court pointed out that the good-faith exception turns on *objective reasonableness.* Moreover, it is significant that in *Leon* the United States Supreme Court affirmed its earlier decision in *Whitely* v. *Warden* (1971) 401 U.S. 560 [28 L.Ed.2d 306, 91 S.Ct. 1031]. The California Supreme Court relied upon that case in its opinion in *Ramirez.* Of even more critical importance in the instant case is the court's recognition in *Leon* of the "collective knowledge of law enforcement" rationale discussed above. The court stated: "References to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually exe-

cuted a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct a search." (*United States* v. *Leon, supra,* — U.S. at p. —, fn. 24 [82 L.Ed.2d at p. 698, 104 S.Ct. at p. 3421].)

We therefore conclude that under California law the search of defendant's residence pursuant to his probation search clause was invalid, notwithstanding the erroneous information which Lacertoso obtained from Williams and on which he relied. Because a similar result is required under the governing federal authority—i.e., there is no arguably applicable "good-faith exception" pertinent to the instant search—it is not necessary to decide in this case whether the truth-in-evidence provisions of Proposition 8 supplant California authority with that of the federal courts.

The trial court erred in denying defendant's suppression motion, and evidence seized pursuant to the warrantless search of defendant's residence should have been suppressed. Because this was the only evidence linking defendant to the theft of the jeep batteries from the Oildale branch station of the United States Post Office, defendant's conviction on his guilty plea should be reversed.

## II.

### DENIAL OF DEFENDANT'S MOTION TO CONTINUE HIS PROBATION REVOCATION HEARING

The People moved to have defendant's probation revoked prior to the time defendant was scheduled to be tried for the underlying offense, i.e., the theft of the post office jeep batteries. Defendant moved to continue the probation revocation hearing until such time as it could be heard concurrently with a jury trial in the underlying criminal action. At the same time defendant made a nonstatutory motion to suppress evidence in the probation revocation hearing based upon the same circumstances discussed in the preceding section of this opinion. At the conclusion of the hearing, defendant's motion to suppress evidence was denied, as was his motion to continue the probation revocation hearing.

The trial court properly interpreted the applicable law in denying defendant's nonstatutory motion to suppress evidence. ■ Evidence which would be inadmissible as illegally seized at a criminal trial is admissible in a probation revocation hearing unless "the police conduct in effectuating

the search was so egregious as to offend 'the "traditions and [collective] conscience of our people" ' [citations omitted] or to 'shock the conscience.' [Citation omitted.]" (*In re Martinez, supra,* 1 Cal.3d 641, 650-651; see also *People* v. *Nixon* (1982) 131 Cal.App.3d 687 [183 Cal.Rptr. 878]; *People* v. *Guerrero* (1978) 85 Cal.App.3d 572 [149 Cal.Rptr. 555].)

The court in *People* v. *Nixon* explained the rationale underlying the court's unwillingness to extend the exclusionary rule to probation revocation proceedings absent government conduct so offensive that no governmental agency should be permitted to benefit by use of the illegally seized evidence. Specifically, the court stated: "The purpose of the exclusionary rule is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. The rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings. As it serves the purpose of deterring police misconduct, the exclusionary rule is a 'needed, but grudgingly taken medicament; no more should be swallowed than is needed to combat the disease.' (Amsterdam, *Search, Seizure and Section 2255: A Comment* (1964) 112 U.Pa.L.Rev. 378, 389.) Even assuming the application of the exclusionary rule here would achieve some minimal deterrent effect, we find the potential benefits were significantly outweighed by potential damage to the probation system. The purpose of probation conditions is to enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings." (*People* v. *Nixon, supra,* 131 Cal.App.3d at pp. 691-692.)

██ However, it is equally well settled that evidence which has been suppressed pursuant to a motion made under section 1538.5 cannot, by the express terms of the statute itself, be used in any other trial or hearing unless further proceedings are taken by the People to seek review of the order suppressing the evidence. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 887 [157 Cal.Rptr. 503, 598 P.2d 473].) Thus, defendant argues that the timing of his probation revocation hearing in the instant case was critical. In effect, denial of the motion for continuance of the probation revocation hearing was the equivalent of revocation and granting the motion would have had the opposite effect.

This is the same situation recently considered in *People* v. *Fuller* (1983) 148 Cal.App.3d 257 [195 Cal.Rptr. 853]. There the issue to be decided was precisely the same—whether denial of the defendant's motion to continue the probation revocation hearing to permit an antecedent hearing on his

section 1538.5 motion constituted an abuse of discretion. The trial court had given no reason for its ruling beyond a vague reference to " 'the administration of the cases and the interests of justice.' " (*Id.*, at p. 262.) The court concluded the trial court did abuse its discretion. It relied primarily (1) upon the preference stated by the California Supreme Court in *People v. Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], and affirmed by the Supreme Court in *People v. Jasper* (1983) 33 Cal.3d 931 [191 Cal.Rptr. 648, 663 P.2d 206], that the criminal trial be held before the probation revocation hearing and (2) the prejudice to a defendant from loss of an impregnable defense to both the criminal charges and the motion to revoke his probation. As the *Fuller* court pointed out, the evidence on which the court based its decision revoking defendant's probation was obtained in a search which was not conducted in so objectionable a manner as to render it inadmissible at a probation revocation hearing, but may well have suffered from a constitutional defect, the same situation as is present in this case.

It is significant that in neither the *Coleman* nor the *Jasper* case did the California Supreme Court set standards to guide trial courts in the exercise of their discretion to control the timing of a probation revocation hearing when criminal charges are concurrently pending. Recognizing this lack of guidance, the court in *People v. Samuels* (1983) 147 Cal.App.3d 1108 [195 Cal.Rptr. 598] stated: "Although the Supreme Court has so far declined to set out the criteria by which a trial court's discretion is to be exercised in deciding whether to hold a probation revocation hearing before or after trial [citation omitted], in general, '[t]he question of whether a particular denial of a continuance is an abuse of discretion must necessarily turn on the circumstances of each case. [Citation.]' [Citation omitted.]" (*Id.*, at p. 1113; see also *People v. Huff* (1983) 148 Cal.App.3d 801 [196 Cal.Rptr. 290].)

█ We glean from *Coleman, Jasper, Samuels* and *Fuller* this standard: the trial court abuses its discretion if it denies defendant's motion to continue the hearing on revocation of probation when defendant's simultaneous challenge to the admissibility of evidence supporting the revocation of probation is more likely than not to support a successful section 1538.5 motion in the concurrent criminal proceeding. That standard is satisfied in this case, as it was in *Fuller.* We therefore conclude that the judgment revoking defendant's probation must be reversed.

Given the stated preference of the Supreme Court in *People v. Coleman, supra,* 13 Cal.3d at page 896, that the probation revocation hearing follow any concurrent criminal proceeding, a meaningful review on appeal of the trial court's decision to disregard that preference is possible in most cases

only if the trial court states on the record its reasons for doing so. In this case there is no such statement.

The People have argued that the result we reach is not required under the federal rules and that those rules are applicable in this proceeding pursuant to the truth-in-evidence provisions of Proposition 8. ■ This argument was rejected in *People* v. *Huff, supra,* 148 Cal.App.3d 801 in which the court, relying upon the Supreme Court's decision in *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149], held that the provisions of Proposition 8 were not applicable in a probation revocation hearing when probation had been granted for a crime committed prior to the passage of the initiative.

We reverse the judgments.

Franson, Acting P. J., and Woolpert, J., concurred.

A petition for a rehearing was denied December 18, 1984, and respondent's petition for a hearing by the Supreme Court was denied January 31, 1985.