477 So.2d 1071 (1985)
Arsemio ALBO, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-1945.
District Court of Appeal of Florida, Third District.
October 29, 1985.
*1072 Bennett H. Brummer, Public Defender and Beth C. Weitzner, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Mark J. Berkowitz, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
SCHWARTZ, Chief Judge.
The defendant below appeals from an order placing him on probation for carrying a concealed firearm, entered pursuant to a nolo plea which reserved the right to challenge the denial of his motion to suppress the gun in question. Albo was stopped by Officer Faria of the City of Miami police on a traffic infraction for which he would have otherwise been merely given a ticket. When, however, a routine computer check effected through the police radio indicated that Albo's license was under suspension for failing to pay a previous traffic fine, he was arrested for driving with a suspended license. Incident to the arrest, the officer searched the vehicle and found a pistol concealed under the armrest. Albo's motion to suppress the firearm was based on the admitted fact that the information provided the officer was incorrect: Albo had paid the fine and his license had been reinstated long before. But, as was stipulated at the hearing, the police computers had not been updated to reflect these facts "for a period of several months" before the stop. On the ground that the arresting officer had acted in "good faith" reliance on the information provided him, the trial judge denied the motion to suppress. We disagree and reverse.
Our decision is controlled by the rationale[1] of Pesci v. State, 420 So.2d 380 (Fla. 3d DCA 1982), in which this court invalidated a search effected, like this one, in response to a radio check which stated that, although it had in fact been quashed two months earlier, there was an outstanding alias capias for the defendant's arrest. In accordance with unanimous authority on the point,[2] we held, reversing the trial court's denial of suppression on the basis of the arresting officer's good faith:
An otherwise illegal arrest is not insulated from challenge by the fact that the *1073 executing officer relied on erroneous radio information dispatched by a fellow officer or employee. Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).
We hold, as has the New York Court of Appeals, that an arrest is invalid when the arresting officer acts upon information in criminal justice system records which, though correct when put into the records, no longer applies and which, through fault of the system, has been retained after the information should have been removed. People v. Jennings, 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (C.A.N.Y. 1981).
Pesci, 420 So.2d at 382.
The trial court nevertheless held, and the state urges, that Pesci has been undermined, indeed destroyed, by the subsequent adoption of a so-called "good faith exception" to the exclusionary rule in United States v. Leon, 468 U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We entirely reject this position. Pesci, in common with virtually every case on the issue, is founded upon the Supreme Court's earlier decision in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Whiteley involved the "fellow officer" or "collective knowledge" rule under which the propriety of a warrantless arrest is determined not alone by whether the arresting officer has personal knowledge of facts which show probable cause, but by whether other policemen who have directed the arrest do so. Whiteley makes very clear, however, that the rule works both ways: to validate an arrest when the responsible officers have probable cause and to vitiate it when, as here, none objectively exists. Thus, the court said:
We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.
Whiteley, 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313.
It is clear, even on its face, that the Leon decision did not affect the viability of this principle. The exception to the exclusionary rule stated in Leon specifically applies to a case in which "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Leon, 468 U.S. at ___, 104 S.Ct. at 3420, 82 L.Ed.2d at 697. In that instance, the fact that the magistrate had erroneously found probable cause will not result in a suppression of evidence seized under the warrant. The explicitly-stated basis for this holding was the determination that the interest in deterring unlawful police conduct, which is the foundation of the exclusionary rule, is not implicated in such a case. This is because, on the one hand, the situation involves "no police illegality and thus nothing to deter," and, on the other, exclusion would have no "significant deterrent effect on the issuing judge or magistrate" who made the underlying error. Id. at ___, 104 S.Ct. at 3420, 3418, 82 L.Ed.2d at 697, 694. Plainly, these considerations have no effect upon a case like Pesci or this one in which no judicial determination was involved and the arrest was based instead wholly upon erroneous information supplied by the law enforcement authorities themselves. This point was made by Leon's own reaffirmation of the principle and holding of Whiteley:
References to "officer" throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare *1074 bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. See Whiteley v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971). [emphasis supplied]
Leon, 468 U.S. at ___, 104 S.Ct. at 3421 n. 24, 82 L.Ed.2d at 698 n. 24.
Any doubt about the inapplicability of Leon to a case in which the arresting officer, although in individual "good faith," acts in reliance upon objectively incorrect information supplied by other police sources, has been dissipated by the recent, post-Leon decision in United States v. Hensley, 469 U.S. ___, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Hensley directly applied the Whiteley probable cause-arrest rule to a Terry stop effected to investigate a prior crime. It held that a stop based on a flyer bulletin is permissible when the officers who issued it had a founded suspicion that the designated person had committed an offense. But the court emphasized that just as the police may permissibly act upon their collective knowledge, so they are restrained by their collective ignorance.

If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good faith defense to any civil suit. [emphasis supplied]
* * * * * *
Assuming the police make a Terry stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop... .
Hensley, 469 U.S. at ___, 105 S.Ct. at 683, 83 L.Ed.2d at 614-15.
As the Fourth District said in Dean v. State, 466 So.2d 1216 (Fla. 4th DCA 1985), even without the confirmatory benefit of Hensley:
A more difficult question is the effect of the supposed warrant. There was no real evidence of a warrant, other than the officer's telling appellant that the police records showed an outstanding warrant. As said in Martin v. State, 424 So.2d 994, 995 (Fla. 2d DCA 1983), "An otherwise illegal arrest cannot be insulated from challenge by the fact that the executing officer relied on erroneous radio information dispatched by a fellow officer or employee" (citing Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)). The state tries to discredit Martin and Pesci v. State, 420 So.2d 380 (Fla. 3d DCA 1982), by citing the recent holding in United States v. Leon, 468 U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Leon had to do with exclusion of evidence obtained in reliance upon a search warrant later found to be invalid, and held that the rule does not bar such evidence. Reliance upon Leon is unfounded as the questions involved in suppression of evidence obtained by a search warrant that was subsequently found invalid are entirely different from those involved in the propriety of resisting an invalid arrest warrant. The two have different roots, are designed to remedy different evils, and involve different policy considerations. The arrest being unlawful, appellant could not be guilty of resisting arrest without violence.
466 So.2d at 1217-18. It is thus clear (a) that the "good faith" required by Leon  which means an objectively considered reasonable basis for police action, 468 U.S. at ___, 104 S.Ct. at 3420 n. 20, 82 L.Ed.2d at 696-97 n. 20  refers to the knowledge and information possessed by the law enforcement community as a whole, rather than the arresting officer alone; and (b) that the considerations that underlay Pesci[3] and which are directly applicable here have not been affected by that decision.
*1075 Applying these thus-still-extant rules to the present case, it is plain that the law enforcement authorities, considered collectively,[4] had no objective cause to believe that Albo's license was suspended so as to justify his arrest and the subsequent search. As LaFave correctly points out:
The point is not that probable cause is lacking because it turned out that the "facts" upon which the officer acted were actually not true, for quite clearly information sufficient to establish probable cause is not defeated by an after-the-fact showing that this information was false, any more than information insufficient to show probable cause can be found adequate on the basis of an after-the-fact showing that in fact the conclusory allegations were correct. Rather, the point is that the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected. [emphasis supplied]
1 LaFave, Search and Seizure § 3.5(d), at 636 (1978) (footnotes omitted).
The unexplained and plainly excessive and unacceptable delay of "several months" in correcting the relevant computer obviously qualifies as the requisite police "fault" under this formulation.[5]United States v. Mackey, 387 F. Supp. 1121 (D.Nev. 1975) (five-month delay); People v. Ramirez, 34 Cal.3d 541, 668 P.2d 761, 194 Cal. Rptr. 454 (1983) (six-month delay); People v. Lawson, 119 Ill. App.3d 42, 74 Ill.Dec. 668, 456 N.E.2d 170 (1983) (four to six week delay); Carter v. State, 18 Md. App. 150, 305 A.2d 856 (1973) (three-month delay); People v. Jennings, 54 N.Y.2d 518, 430 N.E.2d 1282, 446 N.Y.S.2d 229 (1981) (nine-month delay); People v. Jones, 110 Misc.2d 875, 443 N.Y.S.2d 298 (Crim.Ct. 1981) (three-month delay).
In People v. Ramirez, which likewise involved an arrest made in reliance on a computer error of several months duration, the court eloquently stated the reasons why, in this computer ridden age, the exclusionary rule is particularly appropriate:
[C]onsistent with the deterrence goal of the exclusionary rule ... we focus not on the actions of the arresting officer but on the conduct of law enforcement generally. *1076 Suppressing the fruits of an arrest made on a recalled warrant will deter further misuse of the computerized criminal information systems and foster more diligent maintenance of accurate and current records.
* * * * * *
Although in this case the arresting officer no doubt acted in good faith reliance on the information communicated to him through "official channels," law enforcement officials are collectively responsible for keeping those channels free of out-dated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility.
Ramirez, 34 Cal.3d at 547, 552, 668 P.2d at 765, 768, 194 Cal. Rptr. at 458, 461. Ramirez was applied in People v. Howard, 162 Cal. App.3d 8, 208 Cal. Rptr. 353 (1984), which, like Dean, was presciently decided before Hensley but after Leon. The court, after determining, as we have in effect, that Leon was fully consistent with Ramirez,[6] stated:
The important policy considerations underlying the rule announced in Ramirez are plain. If negligent or inadequate recordkeeping is excused merely because a fellow officer is dispatched to make an arrest or, by analogy, effectuate a search without actual knowledge of the negligence, inaccuracies, or inadequacies in the recordkeeping procedure, important safeguards now in place to protect the rights guaranteed by the Fourth Amendment will be lost.
Howard, 162 Cal. App.3d at 19, 208 Cal. Rptr. at 360. We heartily endorse these decisions. A contrary holding  which would sanction evidence seized through the arrest of any citizen merely because he has once been legally subject to apprehension  would affirmatively encourage the careless, perhaps deliberately neglectful, failure to delete names from that proscribed list on what would then be the correct theory that the longer the list, the more persons subject to search and the consequent seizure of admissible evidence. Affirmance would therefore actually advance just that impermissible, indeed unconstitutional, conduct the exclusionary rule was expressly adopted to prevent. We will not so rule.
For these reasons, the judgment is reversed and the defendant discharged.
Reversed.
NOTES
[1] See infra note 3.
[2] Martin v. State, 424 So.2d 994 (Fla. 2d DCA 1983); United States v. Mackey, 387 F. Supp. 1121 (D.Nev. 1975); People v. Ramirez, 34 Cal.3d 541, 668 P.2d 761, 194 Cal. Rptr. 454 (1983); People v. Dickens, 163 Cal. App.3d 377, 208 Cal. Rptr. 751 (1984); People v. Howard, 162 Cal. App.3d 8, 208 Cal. Rptr. 353 (1984); People v. Lawson, 119 Ill. App.3d 42, 74 Ill.Dec. 668, 456 N.E.2d 170 (1983); People v. Decuir, 84 Ill. App.3d 531, 39 Ill.Dec. 912, 405 N.E.2d 891 (1980); Carter v. State, 18 Md. App. 150, 305 A.2d 856 (1973); People v. Jennings, 54 N.Y.2d 518, 430 N.E.2d 1282, 446 N.Y.S.2d 229 (1981); People v. Jones, 110 Misc.2d 875, 443 N.Y.S.2d 298 (Crim.Ct. 1981); People v. Lemmons, 49 A.D.2d 639, 370 N.Y.S.2d 243 (1975); Commonwealth v. Millings, 317 Pa.Super. 235, 463 A.2d 1172 (1983); State v. Trenidad, 23 Wash. App. 418, 595 P.2d 957 (1979).
[3] Without now determining whether the difference is significant, we note the possibility that the holding in Pesci itself may not have survived Leon, because the record-keeping mistake in Pesci was apparently made by an instrumentality of the court, rather than by any law enforcement officer or agency.
[4] Since, as reflected by what we choose to call the "collective knowledge-collective ignorance" rule of Whiteley and Hensley, the purpose of the exclusionary rule is to deter improprieties of any arm of the police which impact upon private rights, it does not matter, as it certainly did not matter to the unlawfully arrested Mr. Albo, whether the "fault" in keeping his records lay with the City of Miami Police Department or the Division of Driver Licenses, which is a part of the Department of Highway Safety and Motor Vehicles, an executive agency which exercises law enforcement authority §§ 321.02, 321.05, 322.02(1), (2), Fla. Stat. (1983). (The immateriality of the question is shown by the fact that, while the state refers to the issue on appeal, the parties made no point of it below, so that the record does not reflect which, or whether both, of the agencies erred.) Our decision is meant to inspire the correction of records, or at least eliminate any reliance upon uncorrected ones, no matter what law enforcement entity is responsible.
[5] The delay involved here distinguishes this case from those cited by the state in which no negligent police recordkeeping was involved. See Childress v. United States, 381 A.2d 614, 618 n. 3 (D.C. 1977) ("four-day delay, two days of which were attributable to the weekend, does not rise to the level of police administrative negligence"); People v. Bell, 74 Mich. App. 270, 253 N.W.2d 726, 730 (1977) (arrest pursuant to a radio check which revealed an outstanding warrant for failure to pay a traffic ticket fine upheld because the fine had been paid only that very same day, thus not permitting cancellation of warrant by time of arrest; ruling applies only "[p]rovided there is no undue delay between the time the ticket underlying a valid warrant is paid and the time that the LIEN system cancels the warrant"); Commonwealth v. Riley, 284 Pa. Super. 280, 425 A.2d 813, 816 (1981) (upholding arrest because information "was stale by only four days"; withholding ruling on any longer delay). Compare Commonwealth v. Millings, 317 Pa.Super 235, 463 A.2d 1172, 1173 (1983) (same court as in Riley suppressed evidence based on records of arrest warrant withdrawn several days earlier; argument based on arresting officer's good faith reliance on records check and lack of knowledge of warrant's withdrawal rejected).
[6] And thus Pesci.